419 A.2d 717

**COMMONWEALTH of Pennsylvania, Appellant at No. 1547**

v.

**Alfonso MOYER.**

**COMMONWEALTH of Pennsylvania**

v.

**Alphonso MOYER, Appellant at No. 1580.**

Superior Court of Pennsylvania.

Argued Nov. 12, 1979.

Filed April 25, 1980.

---

Marilyn C. Fisher, Erie, for appellant at No. 1580 and for appellee at No. 1547.

John H. Moore, Assistant District Attorney, Erie, submitted a brief on behalf of appellant at No. 1547 and for appellee at No. 1580.

Before SPAETH, HOFFMAN and VAN der VOORT, JJ.

SPAETH, Judge:

Both the Commonwealth and the defendant have appealed. The appeals have been consolidated, and this opinion will consider both of them.

The defendant, Alphonso Moyer, was convicted by a jury of arson. He filed timely post–verdict motions in arrest of judgment and, in the alternative, for a new trial. At first, the lower court denied the motions. Upon Moyer's petition, however, the lower court reconsidered Moyer's claim that the Commonwealth had failed at trial to establish the corpus delicti of arson, and concluded that Moyer's two confessions had indeed been improperly admitted. The court then set aside the jury's verdict and ordered a new trial. On its appeal from that order, the Commonwealth argues that the corpus delicti was established, and that the admission of Moyer's confessions was therefore proper. On his appeal, Moyer argues that the lower court was correct in its conclusion that the corpus delicti was not established, but incorrect in ordering a new trial. According to Moyer, the court should have arrested judgment and discharged him.[1]

1. Moyer also argues that should we agree with the Commonwealth that the corpus delicti was established, he is nevertheless entitled to a new trial because the lower court erred 1) by failing to charge the jury that his confessions had to be corroborated by other evidence; 2) in excluding testimony that the damaged house was underinsured; and 3) in admitting the statement he made at the preliminary hearing of his co–defendant. Moyer also argues that trial counsel was

■ Before the Commonwealth may introduce a defendant's confession, it must first establish by independent evidence that a crime in fact occurred. *Commonwealth v. Cockfield*, 465 Pa. 415, 350 A.2d 833 (1976); *Commonwealth v. Ware*, 459 Pa. 334, 329 A.2d 258 (1974); *Commonwealth v. May*, 451 Pa. 31, 301 A.2d 368 (1973); *Commonwealth v. Leamer*, 449 Pa. 76, 295 A.2d 272 (1972); *Commonwealth v. Palmer*, 448 Pa. 282, 292 A.2d 921 (1972). This means that before Moyer's confessions in the present case could be introduced, the Commonwealth had to establish the corpus delicti of arson, *i.e.*, (1) that a fire occurred, and (2) that it had an incendiary origin. *Commonwealth v. Moore*, 466 Pa. 510, 353 A.2d 808 (1976); *Commonwealth v. Cockfield, supra; Commonwealth v. Nasuti*, 385 Pa. 436, 123 A.2d 435 (1956). "This rule is rooted in a hesitancy to convict one of crime on the basis of his statements only. 'The grounds upon which the rule rests are the hasty and unguarded character which is often attached to confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed . . ..' " *Commonwealth v. Ware, supra*, 459 Pa. at 365, 329 A.2d at 274, *quoting Commonwealth v. Turza*, 340 Pa. 128, 134, 16 A.2d 401, 404 (1940).

ineffective for failing to move to suppress his confessions. Because of our disposition below, we do not reach these arguments.

It may be noted that the Commonwealth and Moyer are both entitled to their appeals. Pa.R.A.P. 311(a) provides:

Except as otherwise prescribed by general rule, an appeal may be taken as of right from:

\* \* \* \* \* \*

(5) . . . an order in a criminal proceeding awarding a new trial where the defendant claims that the proper disposition of the matter would be an absolute discharge or where the Commonwealth claims the lower court committed an error of law.

*See also Commonwealth v. White*, 482 Pa. 197, 393 A.2d 447 (1978); *Commonwealth v. Chenet*, 473 Pa. 181, 373 A.2d 1107 (1977); *Commonwealth v. Watson*, 270 Pa.Super. 229, 411 A.2d 501 (1979). Appellant argues that he is entitled to an absolute discharge. The Commonwealth argues the sufficiency of its evidence establishing the corpus delicti, a question of law in a case such as this where a verdict of "not guilty" has not been rendered. *Commonwealth v. Long*, 467 Pa. 98, 354 A.2d 569 (1976); *Commonwealth v. Melton*, 402 Pa. 628, 168 A.2d 328 (1961).

In determining whether here the Commonwealth established the corpus delicti, certain basic principles must be applied. The corpus delicti could be proved by either direct or circumstantial evidence, just as any other fact, *Commonwealth v. Leslie*, 424 Pa. 331, 227 A.2d 900 (1967); *Commonwealth v. Brusky*, 219 Pa.Super. 54, 280 A.2d 826 (1971), the only qualification being that the proof of the corpus delicti had to be proof independent of Moyer's confessions. Moreover, the Commonwealth did not have to prove beyond a reasonable doubt that arson was committed. *Commonwealth v. Patterson*, 247 Pa.Super. 527, 372 A.2d 1214 (1977); *Commonwealth v. Stokes*, 225 Pa.Super. 411, 311 A.2d 714 (1973); *Commonwealth v. Rhoads*, 225 Pa.Super. 208, 310 A.2d 406 (1973). It was enough if the Commonwealth "established that the fire [ ] resulted from human intervention even though the evidence [was] consistent with both accidental and criminal conduct." *Commonwealth v. May, supra*, 451 Pa. at 33, 301 A.2d at 370. *See also Commonwealth v. Cockfield, supra; Commonwealth v. Rhoads, supra.* A corpus delicti, however, was not established "if the independent evidence [was] equally consistent with accident or criminality." *Commonwealth v. Ware, supra*, 459 Pa. at 366, 329 A.2d at 274. *See also Commonwealth v. Moore, supra*, 466 Pa. at 513, 353 A.2d at 809.

The Commonwealth produced six witnesses at trial, whose testimony may be summarized as follows.

On November 11, 1977, Clarence Schnaekel, Deputy Chief of the Erie Fire Department, was called to a fire at 1240 E. 20th Street. No one was at the residence when he arrived, and within half an hour, city firemen brought the fire under control. From his observations on the night of the fire, Schnaekel concluded that the fire originated inside the wall of the second floor bedroom, and from there extended to the attic. Schnaekel did not investigate the origin of the fire further.

Police Detective Paul DeDionsio read Moyer's two confessions. The confessions admitted culpability for the fire, described how the fire was set, and related Moyer's motive.

DeDionsio also testified that on January 30, 1978, Moyer gave him a key to the front door of 1240 East 20th Street. DeDionsio, however, did not think it unusual for Moyer to have the key since Moyer was the general building contractor to repair the damage caused by the fire.

On January 31, 1978, John Kucinski, Chief Fire Inspector of the Erie Bureau of Fire, went to the premises to examine the house for evidence showing that the fire had originated in the manner described by Moyer in his confessions. Kucinski observed that the primary areas of fire damage were on the first and second floors. He also examined a fuse box in the basement and saw in the sockets "some type of metal that shouldn't have been there ...." Based upon his observations, Kucinski believed that the fire could have started the way Moyer said it did, but found no evidence indicating that the fire had indeed started that way. The only evidence Kucinski had that the fire was incendiary was Moyer's confessions. N.T. 46, 51, 52, 54. Kucinski stated that his department originally ascribed the fire to defective wiring in the house.

Anthony Balut, a criminalist with the Pennsylvania Police Crime Laboratory, was introduced by the Commonwealth as an expert witness on the chemical reaction of electrical wiring. Balut had analyzed a socket in the fuse box that had been in the basement of the burned premises. The condition of the socket indicated that a foreign object had been placed in the socket in conjunction with the fuse, but Balut could not determine what that object was. Balut stated that the wire in the socket had reached an approximate temperature of 2,000 ° F., and that an object might have been placed in a second socket in the fuse box. He also stated that shorting of wires can generate high heat.

William Cunningham, an electrical inspector, stated that at some time one of the sockets in the fuse box had had a foreign object behind the fuse, but he, too, could not determine what that object was. However, he placed a penny in the socket, which corresponded perfectly to the burns that were present. On cross–examination, Cunningham said that

in his years as an electrical inspector he had seen, on occasion, a penny screwed into a fuse socket. Such a penny, he said, might never cause a fire, and would become dangerous only if a faulty appliance were hooked into the circuit, or "a jumper [were placed] across wires in the far end of the house ...." N.T. 67.

William Turk, a former insurance adjustor for Nationwide Insurance Company, handled a claim by the owner of the premises for the fire damage. In conjunction with the claim, Moyer presented Turk with an estimate of the cost of repairing the damage. Moyer later presented repair bills to Turk's office for payment.

It is evident that this testimony did not amount to proof independent of Moyer's confessions either that the fire resulted from human intervention, or that its origin was more consistent with criminality than with accident.[2] Although Kucinski testified that the fire *could* have had an incendiary origin, he had no evidence other than Moyer's confessions that it *did* have an incendiary origin. Balut's and Cunningham's testimony established that a foreign object, the size and shape of a penny was present at one time in two of the sockets in the fuse box. Neither, however, stated that the fire was caused by a short in the fuse box. Indeed, the testimony of Schnaekel and Kucinski established that the fire began in the first and second stories, and although Cunningham testified that a short in the fuse box could have caused the fire if electrical wires were crossed in another part of the house, there was no evidence that wires were crossed. Furthermore, even if the Commonwealth had shown that the fire was caused by foreign objects in the fuse box, it still failed to present any evidence that the presence of the objects indicated an incendiary purpose rather than stinginess on the part of someone who wanted to save the cost of replacing blown fuses.

2. It may be noted that Moyer's own testimony did not aid the Commonwealth. Moyer testified that he did not set the fire, and that his confessions resulted from "mental duress."

■ This case is thus similar to *Commonwealth v. Leslie, supra.* There the fire marshall found "a mass of rubble of charred remains at the [burned] building." Although nothing on the premises indicated that the fire was caused deliberately, the marshall "couldn't find any way where the building could have gone spontaneously and in my investigation I felt it was other than accidental fire, and I pursued it further." The Supreme Court held that the fire marshall's unsubstantiated suspicion that the fire was caused by other than accidental or natural means was insufficient to establish the corpus delicti.

The lower court was therefore correct in its conclusion that the Commonwealth had failed to sustain its burden of establishing the corpus delicti. *Commonwealth v. Leslie, supra.* Accordingly, the court should have granted Moyer's motion for a directed verdict of acquittal. *Commonwealth v. Higley,* 59 D. & C.2d 509 (Dauphin Cty.1972) (WICKERSHAM, J.); *Commonwealth v. Croyle,* 8 Chester Reps. 339 (1958). *See also United States v. Fearn,* 589 F.2d 1316 (7th Cir. 1978); *United States v. Echeles,* 222 F.2d 144 (7th Cir.), *cert. denied,* 350 U.S. 828, 76 S.Ct. 58, 100 L.Ed. 739 (1955); *Tabor v. United States,* 152 F.2d 254 (4th Cir. 1945). *Forte v. United States,* 94 F.2d 236, 68 App.D.C. 111 (1937). Proof of the corpus delicti was a necessary predicate to Moyer's conviction. *Commonwealth v. Maybee,* 429 Pa. 222, 239 A.2d 332 (1968), and without such proof the case should not have been submitted to the jury. *Commonwealth v. Burns,* 409 Pa. 619, 187 A.2d 552 (1963).

■ It further follows that the lower court was incorrect in ordering a new trial. After the court had erroneously denied Moyer's motion for a directed verdict of acquittal, and the jury had improperly convicted him upon insufficient proof of the corpus delicti, the court should have arrested judgment and discharged Moyer. *Commonwealth v. Winter,* 174 Pa.Super. 35, 98 A.2d 221 (1953); *Commonwealth v. Gold,* 155 Pa.Super. 364, 38 A.2d 486 (1944); Act of June 15, 1951, P.L. 585, § 1, 19 P.S. § 871, *repealed by* the Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202, No. 53, 42

P.S. § 20002(a) [1275] (eff. June 27, 1980). For the Commonwealth does not meet its burden of proof in a criminal case merely by introducing the confession of the accused. As previously noted, the Commonwealth must also prove the corpus delicti by proof independent of the confession. *E.g., Commonwealth v. Tallon*, 478 Pa. 468, 387 A.2d 77 (1978) (Opinion in Support of Affirmance); *Commonwealth v. Puglise*, 276 Pa. 235, 120 A. 401 (1923); *Gray v. Commonwealth*, 101 Pa. 380 (1882).[3]

The order of the lower court is reversed, judgment is arrested, and Moyer is discharged.

---

**3.** The situation here is to be distinguished from the situation where the Commonwealth proves the corpus delicti through inadmissible evidence. In such a case, the defendant is entitled only to a new trial, the applicable principle being that a motion in arrest of judgment may not be granted on a diminished record. *Commonwealth v. Maybee, supra.* Here the Commonwealth did not prove the corpus delicti by admissible or inadmissible evidence.