**Sagun TULI, M.D., Plaintiff,**

v.

**BRIGHAM & WOMEN'S HOSPITAL, INC., and Arthur Day, M.D., Defendants.**

**Civil Action No. 07cv12338–NG.**

United States District Court, D. Massachusetts.

Jan. 6, 2009.

Margaret M. Pinkham, Camille V. Gerwin, Elizabeth A. Ritvo, Rachel A. Lipton, Brown Rudnick Berlack Israels LLP, Boston, MA, for Plaintiff.

Robert Reid Hamel, Jr., John J. Reardon, Matthew Grygorcewicz, Melick Porter & Shea, L.L.P., Harvey Weiner, Sherry Y. Mulloy, Peabody & Arnold LLP, John P. Ryan, William J. Dailey, Jr., John A. Donovan, III, Sloane & Walsh, LLP, David H. Rich, Todd & Weld, Deborah L. Thaxter, Nixon Peabody, LLP, Boston, MA, for Defendants.

### MEMORANDUM RE: MOTIONS TO EXCLUDE EXPERT TESTIMONY

GERTNER, District Judge:

This memorandum resolves three evidentiary challenges raised by the parties on the eve of the trial. Plaintiff Sagun Tuli, M.D. (hereinafter "Dr. Tuli"), a female spinal neurosurgeon of Indian descent, filed a six-count complaint naming as parties defendant Brigham & Women's Hospital, Inc. (hereinafter "BWH" or "Hospital") and Dr. Arthur Day (hereinafter "Dr. Day"). Dr. Tuli, the first and only board-certified female neurosurgeon at BWH, asserts gender discrimination claims under both Title VII and Mass. Gen. Laws ch. 151B for disparate treatment and retaliation.[1] Trial is slated to begin on January 12, 2009.

Defendants seek to exclude the testimony of Professor Peter Glick, an expert witness offered by the plaintiff. Defs.' Mot. in Limine to Preclude Test. of Pl.'s Expert, Peter Glick (document # 157). Professor Glick is a professor of psychology who is prepared to testify about social frameworks [2] and the "science of sex stereotyping and discrimination." Defendants argue, inter alia, that his expertise is too abstract because he has not applied his research to the specific facts of this case and as such, his testimony will not assist the jury as Fed.R.Evid. 702 requires.

Plaintiff seeks to exclude the testimony of defendants' expert, Dr. L.D. Britt, in effect, for the opposite reason. Pl.'s Mot. in Limine to Exclude Test. of Dr. L.D.

---

**1.** Dr. Tuli also alleges violations of state and federal equal pay statutes, violation of the Massachusetts Health Care Whistleblower Act, interference with her advantageous employment relationship, and slander. *See* Compl. ¶¶ 85–112.

**2.** Professor Glick indicates that this phrase was coined by Laurens Walker and John Monahan to describe their work. *See* Laurens Walker & John Monahan, *Social Frameworks: A New Use of Social Science in Law*, 73 Va. L. Rev. 559 (1987).

Britt (document #170). Dr. Britt's testimony could not be more concrete and directed precisely to the facts of the case at bar. He will opine based on his review of the documentation that Dr. Tuli was not subjected to disparate treatment or gender discrimination. Plaintiff claims that Dr. Britt's opinion does not assist the trier of fact; it effectively supplants it. And in any event, plaintiff argues, however well-credentialed Dr. Britt is as a physician, he has no expertise in the matters on which he seeks to testify.

Finally, defendants seek to exclude the testimony of plaintiff's expert, Dr. Lawrence Huntoon. Defs.' Mot. to Exclude the Proposed Test. of Dr. Lawrence R. Huntoon (document #158). He claims to be an expert in the field of "sham peer review," which he defines as "an adverse action taken in bad faith by a professional review body for some purpose other than the furtherance of quality care, and that is disguised to look like legitimate peer review." Huntoon Report 5 (document #158–2). Like Dr. Britt, he will apply his general expertise to the precise facts of the case at bar, concluding that the peer reviews at issue fit within the "sham" category. Defendants challenge him on a number of grounds, including that he is not an expert in any recognized field of study.

I grant the motions to exclude the testimony of plaintiff's expert Dr. Huntoon and defendants' expert Dr. Britt. I deny the motion to exclude the testimony of plaintiff's expert Professor Glick. As described below, the proposed testimony of Drs. Huntoon and Britt is problematic on a number of grounds under the rules of evidence, not the least of which is that it is profoundly prejudicial. Their testimony amounts to nothing more than well-credentialed physicians saying: Take my word for it; in my judgment, based on solely the cold record and not the testimony of witnesses, this is not discrimination (Dr. Britt), or this is a sham peer review (Dr. Huntoon). Whether the facts prove discrimination or sham peer review in this case depend upon more than the cold record. It depends upon jurors evaluating the credibility of witnesses and drawing complex inferences from the facts they find. It depends upon the application of discrimination law and pretext analysis, both of which have a specialized meaning in the law. In short, these opinions are not at all helpful to the jury in rendering a judgment; moreover, simply telling jurors what the outcome should be could well prejudice them.[3] Both witnesses' reports resonate as a lawyer's closing argument rather than an expert analysis.

Professor Glick's testimony, on the other hand, provides the jury with a context for considering the evidence before it, as opposed to a roadmap to a particular outcome. He expressly refuses to come to a conclusion about whether there has been discrimination in this case because such an opinion is for the jury and because he concludes—appropriately—that it is not possible to make any decision to a reasonable degree of scientific certainty about a real world case. In this regard, Professor Glick's testimony is not unlike social psychological testimony about eyewitness identification. Such testimony does not tell the jury what to decide in any given case; it only tells them what to consider.

---

3. As described below, this analysis is more complicated than the now disfavored common law rule that experts may not testify about the "ultimate issue" in a case. *See* Fed.R.Evid. 704; note 4, *infra*. The testimony is inadmissible because it will not assist the trier of fact in this discrimination case under Fed.R.Evid. 702 and is unduly prejudicial under Fed.R.Evid. 403.

*See United States v. Hines,* 55 F.Supp.2d 62 (D.Mass.1999).

## I. Dr. L.D. Britt

Dr. Britt is an extremely well-credentialed, Board-certified surgeon and academic. He has reviewed the documents in this case and has been asked to decide whether there is support for Dr. Tuli's claim of discrimination. His approach—no doubt derived from his background—is like a "reviewer" of a medical record, reviewing the "documentation" to see if it is sufficient to support a conclusion of discrimination. I agree with plaintiff that his testimony is excludable.

A discrimination case to be tried before a lay jury is not the same as a medical "review." The jury must hear live witnesses, evaluate their credibility in the light of the written record, draw inferences, and apply specialized legal concepts like discriminatory motive and disparate treatment. Clearly, a "highly opinionated statement" amounting to a witness' general belief as to how the case should be decided is simply not helpful to the jury and is unduly prejudicial. *See* 1 Henry Brandis et al., McCormick on Evidence § 12 (6th ed. 2006).

 The issue is not one of *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) or *Kumho Tire v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), or Rule 702, the law defining when expert testimony meets scientific standards, for that matter. The issue is Rule 403: Whatever value Dr. Britt's testimony has is outweighed by "the danger of unfair prejudice, confusion of issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. Dr. Britt is doing little more than putting his imprimatur on the defendant's case.[4] See, e.g., *Berckeley Inv. Group, Ltd. v. Colkitt,* 455 F.3d 195 (3d Cir.2006) (expert witness could testify about the customs and practices in the securities industry, but she could not testify to whether a party complied with legal duties under securities laws).

 In any event, even if this testimony were not unduly prejudicial under Rule 403, I agree that it fails to meet the standards of Rule 702. However well-credentialed Dr. Britt is, his expertise is in surgery, not discrimination. He has never testified on what conduct comprises illegal sex discrimination, a concept with a specialized meaning in the law. When questioned about his expertise, he noted that he is executive director of the Society of Black Academic Surgeons, that he is past president of the National Medical Association, and that in the latter capacity he dealt with "gender and ethnicity disparities and all of that." Britt Dep. 68 (document # 170-3). That is simply not adequate. Dr. Britt is not qualified to testify on the subject for which he is offered.[5]

---

4. Ironically, this testimony is problematic precisely because it is so concrete, so focused on the very facts of the case at bar. Experts are asked to testify to opinion rather than fact. While the difference between fact and opinion is often merely a difference of degree, the closer the purported "expert" comes to testify about the very facts at issue in the case, the more that testimony must be scrutinized. 1 McCormick on Evidence § 12. In drawing this conclusion I am not resurrecting the now

disfavored categorical prohibition of testimony on the "ultimate issue." Fed.R.Evid. 704. The problem with Dr. Britt's (and Dr. Huntoon's) testimony is that they simply do not help the jury here evaluate a complex and difficult discrimination claim.

5. In their opposition to plaintiff's motion to exclude (and request that I reconsider my ruling), defendants argue that the foregoing analysis misses the point: "[C]ontrary to

*See Ward v. Westland Plastics, Inc.*, 651 F.2d 1266, 1271 (9th Cir.1980) (witness "incompetent to voice on opinion on whether ... conduct constituted *illegal* sex discrimination") (emphasis added).

## II. Dr. Lawrence Huntoon

 Dr. Lawrence R. Huntoon is a Board-certified expert in neurology. But, like Dr. Britt, he is not being asked to testify about medical issues; rather, his expertise is in "sham peer review." Defendants claim that this is not a field of expertise at all, that Dr. Britt is the only practitioner/expert in it, and that the testimony thus does not meet the standards of Rule 702 or *Daubert/Kumho Tire*.

There is no question that Dr. Huntoon's testimony is not of the traditional scientific sort addressed by the Supreme Court in *Daubert*. Rather, plaintiff argues that he is an experiential witness, arguably involving the kind of "technical" or "specialized knowledge" involved in *Kumho Tire*. His work is analogous to the work of "employment practices" experts, such as human resources experts, consultants, employment lawyers, and the like. They do not rely on a body of social science research to reach their conclusions; instead, most employment practices experts look to their practical experience with the workplace, often with a specific industry. A question raised by this testimony under *Kumho Tire* is whether the area the witness purports to address is a specialized field at all as to which expert testimony is appropriate. *See Wilson v. Muckala*, 303 F.3d 1207, 1218–19 (10th Cir.2002) (excluding human resources expert's testimony about the defendant's response plan to incidents of sexual harassment because this evidence was within the jury's common knowledge, and therefore, the testimony would not be helpful to the jury).

This concern is especially salient here. Dr. Huntoon has created the field based on his own concerns about sham peer review. He purports to identify when it occurs and when it does not based on his own experiences—though he concedes that he has never been on a credentialing committee, the kind of peer review committee at issue here, and that he has never been a hospital administrator. Nonetheless, he will conclude that the processes involved in the case at bar qualify as sham peer reviews. His judgments about what is and what is not a sham process are value judgments that cannot be reviewed; they are simply his conclusions, *ipse dixit*.

In short, Dr. Huntoon's testimony, like Dr. Britt's, is conclusory and not particularly helpful to the jury. It fails to meet the standards for experiential testimony under *Kumho Tire*. And it is unfairly prejudicial under Rule 403 for the same reason as is Dr. Britt's.

Plaintiff's assertions, Dr. Britt is not expected to testify as 'an expert on the topic of discrimination.' Rather, Dr. Britt is expected to testify very specifically regarding Dr. Day's performance as Chair of the BWH Neurosurgery Department and regarding Dr. Tuli's presentation before the MSCC, as well as the Hospital's role and responsibility in that regard." Defs.' Opp. 3 (document # 179). But defendants are unfairly moving the goalposts, and late in the game, at that. Their contention is flatly contradicted by Dr. Britt's own expert report, which contains the following statements: "There is no convincing documentation that [defendants] have orchestrated or designed a hostile employment environment for Dr. Tuli," Britt Report 2 (document # 170-4); "I find no evidence of bias or discrimination," *id.* at 3; "I find no documentation of any systematic or organizations bias against women," *id.*; "The fact that Dr. Tuli is a women [sic] is unrelated to the appropriate critical analysis she is receiving," *id.*; "I find no evidence of disparate treatment, bias, discrimination, retaliation, or harassment of any nature against Dr. Tuli," *id.* at 4. The request to reconsider is denied.

## III. Professor Peter Glick

■ Professor Glick is an expert in social framework analysis, which specifically addresses issues of sex stereotyping and discrimination. He does not purport to determine whether or not any particular comment or act was determined by the operation of sex stereotypes. Unlike Drs. Britt and Huntoon, he does not seek to opine about the question of whether Dr. Tuli was the subject of disparate treatment, whether discrimination played a role in her case, or whether the review processes were accurate or a sham. While defendants challenge him for not opining about the case at bar, that is in fact a strength of his testimony, not a weakness. He indicates that such an opinion is for the decisionmakers in this case, namely the jury, and that it is not possible to make any decision to a reasonable degree of scientific certainty about a real world case. He notes:

> This report represents social framework testimony that ... is *not* the same as performing diagnostic tests of specific individuals who may have discriminated against Dr. Tuli or a systematic investigation into the social climate at Brigham & Women's Hospital. While one could attempt to perform such tests, their scientific integrity would be fatally compromised when conducted within the context of a lawsuit against those individuals or the corporation that employs them. Social scientific research into the basic principles of sex stereotyping normally involves voluntary participants who are assured (and can rely on these assurances) of the complete anonymity and confidentiality of their responses. It is unlikely that researchers could obtain candid and uncensored self-reports of attitudes from employees who are aware that the research is related to a pending lawsuit against the organization that employs them. Thus, concerns

about scientific validity ... do not recommend mounting an organizational investigation using standard social science techniques.

Glick Report 6–7 (document # 157–2); *see also, e.g., EEOC v. Dial Corp.,* No. 99–C–3356, 2002 WL 31061088 (N.D.Ill. Sept. 17, 2002) (excluding testimony based on plaintiff expert's sexual harassment survey because of its small sample of employees heavily represented by class members, its failure to focus on the time frame relevant for litigation, and its biased questions, which primed respondents to express negative views of the defendant).

Moreover, unlike Dr. Huntoon's, Professor Glick's opinion is based not simply on experience, but also social psychological testing of stereotyping and discrimination over the past thirty or forty years. It is rooted in the study of stereotypes (beliefs about social groups), prejudice (biased feelings towards social groups), and discrimination (differential treatment of social groups). This work has been conducted in both the laboratory and field settings (working adults, large organizations such as the armed forces, etc.).

Significantly, testimony of this sort has been introduced in other discrimination cases. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), marked the Supreme Court's first consideration of expert psychological testimony on stereotyping in a gender discrimination case. Social psychologist Dr. Susan Fiske, Professor Glick's colleague, testified about gender stereotyping patterns in the accounting firm partner selection process, the significance of the fact that the plaintiff was the only woman in the pool of candidates, and the subjectivity of the evaluations without indicating whether any particular comment was the result of stereotyping. 490 U.S. at 235–36, 109 S.Ct.

1775. In addition, another social framework expert, Dr. William T. Bielby, was relied on in *Dukes v. Wal–Mart Stores, Inc.*, 222 F.R.D. 137 (N.D.Cal.2004), in connection with the court's certification of a plaintiff class alleging sex discrimination. *See also Butler v. Home Depot, Inc.*, 984 F.Supp. 1257, 1264–65 (N.D.Cal.1997) (admitting the testimony of Drs. Fiske and Bielby); *Robinson v. Jacksonville Shipyards, Inc.*, 760 F.Supp. 1486, 1502–03 (M.D.Fla.1991) (admitting the testimony of Dr. Fiske).

Defendants cite *Chadwick v. Wellpoint, Inc.*, 550 F.Supp.2d 140, 147 (D.Me.2008), in which the Court concluded that an expert's testimony would not be helpful to a fact-finder because the expert sought to opine about the specifics of the case—what a given supervisor meant in a critical interview with the plaintiff. Professor Glick has been scrupulous to avoid such statements. He does not purport to determine the credibility of the allegations or give an ultimate conclusion about whether discrimination occurred. The most his testimony does is describe how stereotyping and discrimination operate—in what contexts, in what fashion—based on empirical research and note that the statements and treatment described by Dr. Tuli are consistent with that research. Glick Report 39 (document # 157–2). *See, e.g., United States v. Green*, 405 F.Supp.2d 104, 112–13 (D.Mass. 2005) (expert permitted to testify that the pattern of ballistics marks was consistent with the pattern in the suspect gun); *United States v. Hines*, 55 F.Supp.2d 62 (D.Mass.1999) (expert handwriting witness permitted to testify that the handwriting of a given piece of evidence looked like the handwriting of defendant); *id.* (expert social psychologist testified about the decreased accuracy of cross-racial identification relative to same-race identification, the effect of stress on identification, the effect of time on memory as it relates to identification, the "confidence-accuracy" phenomenon suggesting the absence of any correlation between the amount of confidence expressed by an eyewitness in his or her memory and the accuracy of that witness' identification, and the suggestiveness of subtle aspects of the identification process, such as the darkness of a particular photo as compared to others in the array).

In effect, defendants argue that only testimony pointing to the facts of this case will assist the jury and that nothing else fulfills the bedrock requirements of Rule 702. As indicated above, I find just the opposite. Professor Glick brings the insights of established scientific inquiry and social framework analysis, as to which he is an expert, to bear on the facts of this case.[6] It is an area that the jury may well not have common knowledge.[7] But Professor Glick does so in a way that has scientific validity: he cannot say whether a

---

**6.** One scholar describes this as a question of "external validity." "External validity" considers the question, "How far are we justified in taking the data, assuming them to be accurate in their own terms, and in drawing implications or conclusions in other context either very closely related ... or much further away?" Mark P. Denbeaux & D. Michael Risinger, *Kumho Tire and Expert Reliability: How the Question You Ask Gives the Answer You Get*, 34 Seton Hall L. Rev. 15, 39 (2003). External validity can be contrasted with "internal validity," which considers the question, "Are the data any good in their own apparent terms, given the way they were generated?" *Id.*

**7.** *See* Linda Hamilton Krieger, *The Content of Our Categories: A Cognitive Bias Approach to Discrimination and Equal Employment Opportunity*, 47 Stan. L. Rev. 1161, 1187 (1995) (suggesting that some kinds of stereotyping and bias operate unconsciously). This kind of bias may well be outside the common knowledge of the jury as well.

given act or word was discriminatory; he can only show the settings in which discrimination typically occurs and opine on whether the allegations in the case at bar are consistent with the observed patterns.[8] He allows the jury to make the final decision and expressly disclaims the capacity to draw any conclusion in this particular case. His testimony is admissible.

## IV. Conclusion

Defendants' motion in limine to preclude testimony of plaintiff's expert, Peter Glick (document # 157) is **DENIED**. Defendants' motion to exclude the proposed testimony of Dr. Lawrence R. Huntoon (document # 158) is **GRANTED**. Plaintiff's motion in limine to exclude testimony of Dr. L.D. Britt (document # 170) is **GRANTED** and Defendant's motion for reconsideration (document # 179) is **DENIED**.

**SO ORDERED.**

---

8. Significantly, the defendants have not challenged Professor Glick on any ground under Rule 702 apart from their specious claim that his testimony is flawed precisely because he will not opine about whether discrimination occurred in this case. They have not challenged whether the area in which he purports to testify, social framework analysis, is the subject of scientific inquiry. Nor have they challenged whether he is qualified to testify about that field, as he clearly is.