**Jeremy SOMNIS, Plaintiff,**

v.

**COUNTRY MUTUAL INSURANCE COMPANY, Defendant.**

**Civ. No. 11–324 (RHK/LIB).**

United States District Court,
D. Minnesota.

Jan. 3, 2012.

## MEMORANDUM OPINION AND ORDER

RICHARD H. KYLE, District Judge.

On July 2, 2009, a fire damaged the home of Plaintiff Jeremy Somnis. He filed a claim with his homeowners insurer, Defendant Country Mutual Insurance Company ("Country Mutual"), which was denied. He then commenced the instant action, seeking to recover the policy proceeds. Presently before the Court is Somnis's Motion to Exclude the Expert Opinion of Gregory St. Onge (Doc. No. 13), an investigator hired by Country Mutual, who opined that the fire was intentionally set. For the reasons that follow, the Court will grant in part and deny in part Somnis's Motion.

## BACKGROUND

The relevant facts are undisputed. Somnis owns a home near Grand Marais, Minnesota, that was damaged by fire on July 2, 2009. (Somnis Aff. ¶ 4.) Responding firefighters observed flames coming out of the basement's south wall and found a fire in the basement ceiling. (St. Onge Aff. Ex. B at 2.) Although the fire was quickly extinguished, it caused significant damage to the basement and lesser damage (from smoke and heat) to other rooms in the house. (*Id.* App'x B.)

At the time of the fire, Somnis's home was insured under a policy issued by Country Mutual, and he submitted a claim seeking to recover over $200,000 in losses. (Somnis Aff. ¶ 5.) Country Mutual commenced an investigation; it retained St. Onge, a certified fire investigator with nearly fifteen years' experience in fire cause and origin analysis. (St. Onge Aff. ¶ 16 & Ex. A.) St. Onge has worked as a firefighter since 1974, is a licensed law-enforcement officer in Wisconsin, and has

Harold A. Frederick, Matthew H. Hanka, Fryberger, Buchanan, Smith & Frederick, P.A., Duluth, MN, for Plaintiff.

Leatha G. Wolter, Meagher & Geer, PLLP, Minneapolis, MN, for Defendant.

served as an instructor for various fire-investigation courses. (*Id.* Ex. A.)

St. Onge examined Somnis's home, following a "systematic protocol" starting at the exterior, moving onto the home's main floor, and finally proceeding to the basement. (*Id.* ¶¶ 18–19.) He analyzed burn patterns, smoke damage, and debris, and he evaluated possible ignition sources, including several space heaters in the basement. (*Id.* ¶ 20.) In addition, several electrical items were removed from the basement and sent to an engineering company for testing. (*Id.*) No evidence of a short or arcing was found in those items. (*Id.* ¶ 20 & Ex. B at 4–7,) A space heater near a couch/hide-a-bed, which appeared to be the location of the fire's origin, also was tested and found to have sensors that would disable the heater in the event it became too hot. The sensors were in excellent condition and fully operational. (*Id.* Ex. B at 8.)

As part of his investigation, St. Onge also conducted a recorded interview of Somnis. (*Id.* ¶ 17 & Ex. B.) He asked about Somnis's whereabouts on the date of the fire, the items in the basement, and the home's occupants. (*Id.*) He learned that Somnis was the only person living in the home on the date in question and had not been in the basement that day. He also learned that other than a space heater and some bedding items, nothing was in the vicinity of the couch/hide-a-bed immediately before the fire. (*Id.*) ·

Based on his investigation, St. Onge concluded that "the fire started on the couch [and] not from the space heater or overhead lighting. There was nothing on the couch to start a fire. The space heater was attacked by the fire. It was not the source of the fire." (*Id.* Ex. A at 8.) He then offered the following opinion: "After

systematically examining the fire scene, no accidental fire cause has been found that explains the cause of this fire. *In my opinion, this fire is an incendiary fire started by some person on the couch in the basement family room of the house.*" (*Id.* (emphasis added).) [1] St. Onge apparently reached this opinion solely because he was unable to identify an accidental cause for the fire. (*See also* St. Onge Aff. ¶ 22.)

By letter dated June 3, 2010, County Mutual denied Somnis's claim based on (1) the policy's "intentional loss" exclusion and (2) the policy's "concealment or fraud" exclusion. (Somnis Aff. Ex. A.) While not expressly accusing Somnis of arson, the letter asserted that he had made "misrepresentations" regarding his claim, "including misrepresentations regarding the cause of the fire." (*Id.*)

In January 2011, Somnis commenced the instant breach-of-contract action in the Cook County, Minnesota, District Court, seeking to recover for the losses he sustained in the fire; Country Mutual timely removed the action to this Court. With discovery complete, Somnis has now moved, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), to exclude St. Onge from testifying at trial. The Court held a hearing on the Motion on December 19, 2011, and it is now ripe for disposition.

## STANDARD OF REVIEW

 Rule 702, which governs the admission of expert testimony, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qual-

---

1. The word "incendiary" means "relating to or involving a deliberate burning of proper-

ty." Webster's Third New International Dictionary 1141 (1986 ed.).

ified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. The Court, acting as a "gatekeeper," must evaluate whether proffered expert testimony passes muster under this Rule, bearing in mind that the touchstone for admitting such testimony is assistance to the trier of fact. *See, e.g., Lee v. Andersen,* 616 F.3d 803, 808 (8th Cir.2010); *Larson v. Kempker,* 414 F.3d 936, 941 (8th Cir.2005). "The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." *Lauzon v. Senco Prods., Inc.,* 270 F.3d 681, 686 (8th Cir.2001) (citing *Daubert,* 509 U.S. at 592, 113 S.Ct. 2786). The Court enjoys "broad discretion" in determining whether an expert's testimony is admissible. *Weisgram v. Marley Co.,* 169 F.3d 514, 518 (8th Cir. 1999).

Rule 702 "reflects an attempt to liberalize ... the admission" of expert testimony and "clearly is one of admissibility rather than exclusion." *Polski v. Quigley Corp.,* 538 F.3d 836, 838–39 (8th Cir.2008). Hence, "the rejection of expert testimony is the exception rather than the rule." *Robinson v. GEICO Gen. Ins. Co.,* 447 F.3d 1096, 1100 (8th Cir.2006). An expert's testimony should be admitted if it "advances the trier of fact's understanding to any degree." *Id.* (internal quotation marks and citations omitted). But when the testimony "can offer no assistance to the jury," it should be excluded. *United States v. Finch,* 630 F.3d 1057, 1062 (8th Cir.2011) (citations omitted).

## ANALYSIS

At first blush, it appeared to the Court that Somnis was seeking *only* to preclude St. Onge from testifying at trial that the fire was incendiary. For example, in his Memorandum he argued that St. Onge's "opinion *regarding the alleged incendiary nature of the fire* fails to pass scrutiny under Rule 702 ... and *Daubert.*" (Def. Mem. at 2; *accord, e.g., id.* at 6 (arguing that St. Onge's "opinion regarding the alleged incendiary nature of the fire fails to meet the federal standard for admissibility"); *id.* at 8 (arguing that Country Mutual "cannot show that Mr. St. Onge's opinion regarding the alleged incendiary nature of the fire is admissible").) He concluded his Memorandum by "urg[ing] the court to exclude ... St. Onge's opinion *that the fire at the Somnis house was an incendiary fire.*" (*Id.* at 14 (emphasis added).)

At oral argument, however, it became clear that Somnis was seeking to exclude more than just St. Onge's opinion that the fire was incendiary. Rather, he suggested that the Court should preclude St. Onge from testifying at trial *at all,* including discussing his examination of the fire scene and the reasons why he excluded accidental causes for the fire. Putting aside whether it was appropriate for Somnis to expand the scope of his Motion at oral argument, there is no principled basis to preclude St. Onge from testifying on such topics.

Notably, Somnis has nowhere argued that St. Onge is unqualified to render opinions regarding accidental causes (or the lack thereof) based on his knowledge, training, or experience, nor could the Court so conclude from the current record. Furthermore, courts repeatedly have found it appropriate for a fire investigator to (1) describe the manner in which he examined a fire scene, (2) explain why he excluded accidental causes for a fire, and (3) offer opinions regarding the location of a fire's origin. *See, e.g., Hickerson v.*

*Pride Mobility Prods. Corp.*, 470 F.3d 1252, 1257–58 (8th Cir.2006); *Weisgram*, 169 F.3d at 519 ("[A]s a qualified expert in fire investigation, Freeman was free to testify—as he did—that the burn and smoke patterns and other physical evidence indicated that, in his opinion, the fire started in the entryway and radiated to the sofa.").

Nevertheless, Somnis contended at oral argument that St. Onge must not testify at trial because, in his view, permitting the jury to learn he did not find an accidental cause would lead it to *speculate* the fire was incendiary. Yet, the Court does not believe such a conclusion would be speculative; rather, it would be a reasonable *inference.* Indeed, the absence of an accidental explanation for a fire frequently has been cited as a sufficient basis for a finding of arson. *See, e.g., Fitzgerald v. Great Cent. Ins. Co.*, 842 F.2d 157, 158 (6th Cir. 1988) (jury's finding of arson supported by testimony of expert who "eliminated all other natural or accidental causes in the area where the fire originated"); *Weber v. Travelers Home & Marine Ins. Co.*, 801 F.Supp.2d 819, 829 (D.Minn.2011) (Kyle, J.) (noting that arson is "one permissible inference" from "the absence of evidence suggesting an accidental cause"); *Reitzner v. Am. Family Mut. Ins. Co.*, No. A08–0747, 2009 WL 910998, at *5 (Minn.Ct.App. Apr. 7, 2009) (insurer made "strong showing that the fire was incendiary" by "eliminating all accidental causes"). Under Somnis's logic, no jury could find arson unless an investigator actually located physical evidence (such as an accelerant) indicating a fire was intentionally set. Such a requirement has no foundation in the law and would not make intuitive sense, as physical evidence of arson often is consumed by the fire itself. Hence, courts repeatedly have held that "[i]n establishing ... [a] fire was of incendiary origin, ... it is not essential to show that some highly combustible material was employed. *Incendiarism may be shown by ... demonstrating the improbability that the fire had resulted from accidental or natural causes.*" *Hughes v. State*, 6 Md. App. 389, 251 A.2d 373, 376 (Md.Ct. Spec.App.1969) (emphasis added); *accord, e.g., Riner v. Commonwealth*, 268 Va. 296, 601 S.E.2d 555, 575 (2004) ("When a factfinder has accepted the testimony of a qualified expert witness, which negates every reasonable possibility that a fire was of accidental origin, we cannot hold the evidence insufficient, as a matter of law, to support a finding that the fire was of incendiary origin."); *State v. Blocker*, 205 S.C. 303, 31 S.E.2d 908, 910 (1944) ("While there is usually little difficulty in proving a burning, it is frequently exceedingly difficult to prove the criminal agency of some person in causing the burning.... [T]he criminal agency is shown by the absence of circumstances, conditions, and surroundings indicating that the fire resulted from an accidental cause.").

Furthermore, the jury will be able to base its arson determination (or lack thereof) on far more than just St. Onge's testimony. Notably, Country Mutual also intends to proffer evidence indicating that Somnis (1) was experiencing financial difficulty around the time of the fire and (2) had an opportunity to set it. The company learned during discovery that Somnis had tried to sell his house in 2008 and 2009 and was experiencing financial problems around the time of the fire. It also learned that he was the only person living in the house on the fateful day and was not home when the fire occurred. Courts have repeatedly recognized the importance of such evidence in arson cases, *see, e.g., Thomure v. Truck Ins. Exch.*, 781 F.2d 141, 142–43 (8th Cir.1986) (*per curiam*); *Weber*, 801 F.Supp.2d at 828–30; *Simons v. State*, No. C9–95–2561, 1996 WL 469364, at *3 (Minn.Ct.App. Aug. 20, 1996), which—when combined with evidence indi-

cating an incendiary origin provides a sufficient basis to conclude that arson was a fire's likely cause. *See, e.g., Quast v. Prudential Prop. & Cas. Co.,* 267 N.W.2d 493, 495 (Minn.1978) ("[M]otive ..., together with the fire's incendiary origin, is enough to defeat [a] claim for payment under [an] insurance policy."); *Reitzner,* 2009 WL 910998, at *4; *Summit Fid. & Sur. Co. v. Don Stern Enters., Inc.,* No. C3–95–2099, 1996 WL 266419, at *3 (Minn.Ct.App. May 21, 1996); *Montgomery v. N. Star Mut. Ins. Co.,* No. C2–93–64, 1993 WL 430347, at *1 (Minn.Ct.App. Oct. 26, 1993); *DeMarais v. N. Star Mut. Ins. Co.,* 405 N.W.2d 507, 509 (Minn.Ct.App.1987).

For these reasons, the Court rejects Somnis's "new" argument that St. Onge should be precluded from testifying at trial regarding the absence of accidental causes for the fire. However, this leaves unresolved the question originally posed by Somnis's Motion: may St. Onge opine that the fire was, in fact, *incendiary?* In the Court's view, this question must be answered in the negative.

The parties have expended significant portions of their briefs arguing whether St. Onge's opinion is sufficiently "reliable" to be admissible under *Daubert.* (*See* Pl. Mem. at 8–13; Mem. in Opp'n at 10–15; Reply at 2–11.) But assuming *arguendo* the "reasoning or methodology underlying [the opinion] is scientifically valid," *Daubert,* 509 U.S. at 592–93, 113 S.Ct. 2786—a proposition not entirely free from doubt— it is nevertheless excludable because it would not help the jury.[2] Stated differently, the opinion would not "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702.

■■■ As discussed above, an (unstated) inference undergirds St. Onge's opinion: the absence of an accidental explanation suggests the fire was incendiary. Yet, the Court perceives no reason why an expert is necessary to draw that inference for the jury. Indeed, once St. Onge testifies that he could not identify an accidental cause for the fire, the jury will be capable of concluding on its own whether the fire

**2.** The process employed by St. Onge—deeming a fire intentional after systematically ruling out all accidental causes—is known in the fire-investigation community as "negative corpus." 5 Faigman, Kaye, Saks & Sanders, *Modern Scientific Evidence: The Law and Science of Expert Testimony* § 39:65 (2011–12 ed.) (*"Modern Scientific Evidence"*). In 1992, negative corpus was first accepted as valid by the National Fire Protection Association and incorporated into Section 921 of its "Guide for Fire and Explosion Investigations," a leading treatise on fire investigation techniques. *See* http://www.nafi921.com/about. htm (last visited December 29, 2011). This was controversial, as the conclusion that a fire was intentional due to the *lack* of evidence of an accidental cause is an untestable hypothesis and, hence, inconsistent with the scientific method. *See, e.g., Daubert,* 509 U.S. at 590, 113 S.Ct. 2786 ("[I]n order to qualify as 'scientific knowledge' [under Rule 702,] an inference or assertion must be derived by the scientific method."); *Caraker v. Sandoz*

*Pharms. Corp.,* 188 F.Supp.2d 1026, 1030 (S.D.Ill.2001) (noting the "hallmark" for reliability of an expert's opinion is "the scientific method, *i.e.,* the generation of testable hypotheses that are then subjected to the real world crucible of experimentation, falsification/validation, and replication"). Accordingly, some courts have rejected negative corpus as a basis for finding arson, *see, e.g., Mich. Millers Mut. Ins. Corp. v. Benfield,* 140 F.3d 915, 920–21 (11th Cir.1998); *Commonwealth v. Moyer,* 277 Pa.Super. 172, 419 A.2d 717, 719–20 (Pa.Super.Ct.1980), and even Section 921 previously noted that negative corpus was appropriate only "in limited circumstances." *Modern Scientific Evidence* § 39:65. In 2011, after much deliberation, the NFPA rejected negative corpus and revised Section 921 to provide that the "process is not consistent with the Scientific Method, is inappropriate, and should not be used because it generates un-testable hypotheses, and may result in incorrect determinations of the ignition source and first fuel ignited." *Id.*

was intentional. His opinion is excludable, therefore, because an expert who simply "draws inferences or reaches conclusions within the jury's competence" does not provide "helpful" testimony under Rule 702. *Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 883 (8th Cir.1998); *accord, e.g., Williams v. Pro–Tec, Inc.*, 908 F.2d 345, 348–49 (8th Cir.1990) (expert's opinion properly excluded where jury was "apprised of all the relevant facts" and "equally able to draw the asserted conclusion"); *United States v. Arenal*, 768 F.2d 263, 269–70 (8th Cir.1985) (district court abused its discretion in permitting police officer to testify about inference to be drawn from evidence because, once the evidence was in the record, "the jury was competent to draw its own conclusion"). Simply put, "expert testimony may be admitted [only] where the inferences that are sought to be drawn are inferences that a jury could not draw on its own." *United States v. Hines*, 55 F.Supp.2d 62, 64 (D.Mass.1999).

 Federal Rule of Evidence 403 also counsels against permitting St. Onge to testify that the fire was intentional.[3] Given that "[e]xpert evidence can be both powerful and quite misleading," *Daubert*, 509 U.S. at 595, 113 S.Ct. 2786, the Court must be particularly careful to exclude such testimony if it might lead the jury to simply rely on the expert's opinion and "surrender[ ][its] own common sense." *Westcott v. Crinklaw*, 68 F.3d 1073, 1076 (8th Cir.1995) (citations omitted). Permitting St. Onge to draw an inference that the jury can reach on its own would do "little more than put[ ] his imprimatur on the defendant's case," *Tuli v. Brigham & Women's Hosp., Inc.*, 592 F.Supp.2d 208, 212 (D.Mass.2009), and, in essence, simply

"tell the jury what result to reach." *Lee*, 616 F.3d at 809 (quoting Fed.R.Evid. 704 advisory committee's note). As succinctly stated in *Hines*, it is for "[t]he jury . . . to draw reasonable inferences from the first-hand data. When an expert witness is called upon to draw those inferences, several concerns are raised. . . . [A] certain patina attaches to an expert's testimony unlike any other witness; this is 'science,' a professional's judgment, the jury may think, and give more credence to the testimony than it may deserve." 55 F.Supp.2d at 64. These concerns are manifest here.

## CONCLUSION

For the reasons set forth above, St. Onge may testify at trial that his examination of the fire scene failed to reveal an accidental cause for the fire. However, his opinion that the fire was incendiary "would not be helpful because it would not tell the jury anything that lay persons could not logically deduce on their own; [ ]he would be drawing h[is] conclusion in the same manner as lay persons, i.e., by exercising simple logic." *Ruminer v. Gen. Motors Corp.*, No. 4:03–CV–00349, 2006 WL 287945, at *13 (E.D.Ark. Feb. 6, 2006). To the extent County Mutual believes the jury should reach that conclusion, it may press that point in its closing argument. *See In re Zyprexa Prods. Liab. Litig.*, 489 F.Supp.2d 230, 283 (E.D.N.Y.2007) (Weinstein, J.) ("Expert testimony should not merely reiterate arguments based on inferences that can be drawn by laypersons; those can properly be advanced by the parties in their summations.").

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

---

**3.** Although Somnis did not invoke Rule 403 in his Motion, *"Daubert* makes it clear that when assessing the admissibility of proffered scientific expert testimony under Rule 702, the trial court must also take into account the

interplay of other relevant rules of evidence, such as Rule 403." *United States v. Kime*, 99 F.3d 870, 884 (8th Cir.1996) (citation omitted).

ORDERED that Somnis's Motion (Doc. No. 13) is **GRANTED IN PART** and **DENIED IN PART.** The Motion is **GRANTED** to the extent it seeks to preclude St. Onge from testifying at trial (orally or otherwise) that the fire was incendiary. In all other respects, the Motion is **DENIED.**

