Commonwealth *v.* May, Appellant.

Argued May 25, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Thomas C. Zerbe,* Public Defender, for appellant.

*Marion E. MacIntyre,* Deputy District Attorney, with him *LeRoy S. Zimmerman,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE NIX, March 16, 1973:

The appellant, Nancy Lee May, her step-brother, Larry Ray Alleman, and her father, Ray Alleman, lived in a frame cabin near Harrisburg. On March 15, 1971, Larry and a neighbor returned from school at about 3:30 p.m. to find the cabin on fire. Upon discovering that the door was locked, they broke a window, but the intense smoke drove them back. The fire department was sumomned and, when the firemen gained access by breaking down the door, they found the body of Ray Alleman, appellant's father, lying inside the door.

Appellant was arrested the same day and charged with the murder of her father. After a trial by jury she was convicted of murder in the second degree. Post trial motions were argued and denied and the appellant was fined $1,000 and sentenced to not more than twenty years imprisonment. This direct appeal follows.

Appellant's sole contention is that the Commonwealth failed to establish the corpus delicti prior to the introduction of her confession.

To establish a criminal case, the Commonwealth has the burden of showing: (a) that a loss has occurred; (b) that this loss occurred through a criminal agency; and (c) that the accused was, in fact, the perpetrator of the deed. *Commonwealth v. Burns,* 409 Pa. 619, 187 A. 2d 552 (1963); *Commonwealth v. Homeyer,* 373 Pa. 150, 94 A. 2d 743 (1953); *Commonwealth v. Gardner,* 282 Pa. 458, 128 A. 87 (1925). Corpus delicti is a rule of evidence making it mandatory that evidence of the first two elements be presented before the Commonwealth can rely upon statements and declarations of the accused. *Commonwealth v. Leamer,* 449 Pa. 76, 295 A. 2d 272

(1972) ; *Commonwealth v. Palmer*, 448 Pa. 282, 292 A. 2d 921 (1972) ; *Commonwealth v. Burns*, supra; *Commonwealth ex rel. Lagana v. Day*, 385 Pa. 338, 123 A. 2d 172 (1956). Specifically considering an arson murder, the corpus delicti consists of proof of a death resulting from a fire of incendiary origin. *Commonwealth v. Bolish*, 381 Pa. 500, 113 A. 2d 464 (1955).

It has long been the law of this Commonwealth that the prosecution has no duty to affirmatively exclude the possibility of accident or suicide in order to establish the corpus delicti; *Commonwealth v. Ross*, 403 Pa. 358, 169 A. 2d 780 (1961) ; *Commonwealth v. Bishop*, 285 Pa. 49, 131 A. 657 (1926) ; *Commonwealth v. Puglise*, 276 Pa. 235, 120 A. 401 (1923). Such a requirement would, in effect, require the Commonwealth to exclude every possibility of doubt that death was caused by criminal agency.

In *Commonwealth v. Boykin*, 450 Pa. 25, 298 A. 2d 258 (1972),[1] the court held that the Commonwealth was merely required to establish that the death was consistent with a criminal agency.

Under the *Boykin* test in a case of arson murder, the Commonwealth has met its burden of establishing a corpus delicti for the purpose of introducing appellant's extrajudicial statements when it has established that the fire causing death resulted from human intervention even though the evidence is consistent with both accidental and criminal conduct.[2] In the case at bar, the jury was not only presented with evidence

---

[1] This writer dissented in Boykin.

[2] Of course, in order to convict a defendant of arson murder the jury must find beyond a reasonable doubt that the defendant willfully caused the fire. The appellant does not contend that the evidence in this case—including her oral admissions—was insufficient to allow the jury to so find. She contends only that without her oral admissions there was no evidence of *deliberate* human intervention.

from which they could conclude that the fire resulted from human intervention, but was also provided with evidence independent of appellant's statements which would justify a determination that it was of incendiary origin.

Prior to introducing various statements by the appellant, the Commonwealth produced Ronald E. Yanoscsik, a Pennsylvania State Police Fire Marshal. He testified that the fire started in a cardboard box containing clothing, photographs and hair curlers, and that he found no positive signs of deliberate human intervention such as gasoline, kerosene or an incendiary device. However, he also testified that he could find nothing such as oil rags to indicate that the fire started by spontaneous combustion. There was no sign of an accident involving electrical wiring or a gas heater. The following colloquy ensued: "Q. Now, in your opinion, considering all the facts, was there human intervention involved in this fire? A. There had to be. Q. And why do you say that? A. Because fire doesn't start by itself unless it is an accidental fire caused by electricity, lightning, spontaneous combustion. Q. You found no evidence—THE COURT: Let me ask you, not to interrupt, you say nothing to indicate an accidental fire, and nothing you tell me—you started to tell what an accident fire is. THE WITNESS: The accidental fire is one that would be caused by an electrical short circuit, by spontaneous combustion by lightning. THE COURT: Suppose someone fell asleep while smoking, would that be an accidental fire? THE WITNESS: Yes, sir. THE COURT: All right. Go ahead. You said there had to be human intervention. If someone fell asleep smoking, would that be human intervention? THE WITNESS: Yes, but he didn't mean to start the fire. He accidentally started—dropped a cigarette and started a fire. Q. All right. Now, through your investigation here and the investigation that continued, do you have

any opinion as to whether or not this fire was of incendiary origin and if so, what is it and explain what that means. THE COURT: I think if you can explain what you mean first by incendiary origin. THE WITNESS: Incendiary origin of a fire means that the fire in no way was caused by any accidental means. It had to be started by some human being. BY MR. WION: Q. And, indeed, purposedly started or set? A. That's correct. Q. And again, in your opinion, was this fire of incendiary origin? A. It was." On cross-examination, the trooper admitted that this fire could have been caused by a carelessly tossed cigarette or match.

In addition to the trooper's testimony, the Commonwealth produced circumstantial evidence which it claims tends to establish criminal agency. First, Larry Alleman testified that the door was nearly always unlocked when he returned from school, but that on this occasion the door had been locked. The lock on the door was the Yale type with a knob and a button on the inside of the door, thus making it unlikely that the door could be locked accidentally. Second, at approximately 3:10 p.m., only twenty minutes before the fire was discovered, the wife of the owner of a nearby tavern saw the appellant leave the cabin, get in her car and drive away.

It is not fatal to the Commonwealth's case that the testimony offered to establish a corpus delicti is circumstantial and not direct. As noted in *Commonwealth v. Leslie*, 424 Pa. 331, 334, 227 A. 2d 900 (1967); " 'That the corpus delicti can always be proved by circumstantial evidence is unquestionable . . .' By its very nature, arson is rarely committed in the presence of others. Ordinarily, it is committed by someone alone and in secret, and the absence of direct evidence is no bar to conviction." (Citations omitted).

From the testimony of the expert, the jury was justified in finding that the fire was caused by a human agency. The Commonwealth produced evidence that

the door which customarily remained unlocked had on this occasion been deliberately locked; that the appellant was the last one observed leaving the premises and closing this door only twenty minutes before the discovery of the fire; that the victim worked at nights and customarily slept at the time this fire was deemed to have begun; and that on the day in question the victim had been drinking heavily in the morning which would suggest that his sleep would be deeper than usual.

From this evidence we hold that the Commonwealth sufficiently established a death consistent with a criminal agency, thereby permitting the jury, if these facts were accepted, to consider the statements and declarations of the appellant.

The appellant's reliance upon *Commonwealth v. Leslie,* supra, and *Commonwealth v. Winter,* 174 Pa. Superior Ct. 35, 98 A. 2d 221 (1953) is misplaced. In *Leslie,* the expert testified that his investigation of the site revealed nothing as to the cause of the fire. Nevertheless, he concluded that the fire was of incendiary origin. In *Winter,* the investigating officer admitted that he was unable to determine the cause of the fire. Here, the investigator relied upon his expertise in excluding the possibility of spontaneous combustion and was convinced that the origin had been caused by human agency.

We hold that the evidence did establish that death was consistent with the criminal agency and it was proper to allow the jury to consider the statements and declarations of the appellant.

The judgment of sentence is affirmed.

Mr. Justice EAGEN dissents.