431 A.2d 1016
**COMMONWEALTH of Pennsylvania,**
**v.**
**Tina Sue HERMAN, Appellant.**
**COMMONWEALTH of Pennsylvania,**
**v.**
**David Alan MOSER, Appellant.**
Superior Court of Pennsylvania.
Submitted March 6, 1980.
Filed June 12, 1981.

Allen H. Smith, York, for appellants.

John C. Uhler, District Attorney, York, for Commonwealth, appellee.

Before CERCONE, President Judge, and WATKINS and MONTGOMERY, JJ.

CERCONE, President Judge:

This is an appeal from the judgment of sentence by the Court of Common Pleas of York County. Appellants Tina Sue Herman and David Alan Moser were convicted by a jury on September 20, 1978 for possession of drugs with intent to deliver in violation of the Controlled Substance, Drug, Device, and Cosmetic Act.[1] After the denial of their post-verdict motions, appellant Herman was sentenced to thirty days imprisonment with a subsequent period of eleven months probation and, appellant Moser was sentenced to not less than three nor more than twelve months imprisonment. From their respective judgments of sentence, appellants filed individual appeals which were later consolidated for our review.[2] On appeal, they raise four issues seeking reversal: (1) that the Commonwealth failed to establish a proper chain of custody with respect to marijuana seized from appellants' apartment; (2) that the Commonwealth failed to prove that the particular kind of marijuana found was of the kind prohibited by law; (3) that the Commonwealth failed to adequately prove that appellants were not licensed to legally possess marijuana; and (4) that the Commonwealth failed to prove the existence of a corpus delicti independent of appellants' admissions. Since we find these issues to be devoid of merit, we affirm the judgment sentence entered by the lower court.

On March 3, 1978, Pennsylvania State Police Officers Phillip George and Robert Kessler, assisted by two agents from the State Drug Enforcement Bureau and a York City Police Detective, entered the appellant's second floor apartment at 219 South Pine Street in the City of York pursuant to a search warrant. They were let into the apartment by appellant Moser, whereupon a search of the apartment ensued. In entering the bedroom Trooper George came upon a table upon which were found nine plastic bags containing varying amounts of marijuana, a plastic bag containing

1. Act of April 14, 1972, P.L. 233, No. 64 § 13, 35 P.S. 780–113 (1977).

2. Jurisdiction is provided through The Act of July 9, 1976, P.L. 586, No. 142 § 2, 42 Pa.C.S. § 742 (1980).

marijuana seeds, a scale, a shopping bag, and a cardboard box containing plastic bags and ties. These items were secured by the police officer. On top of the scale a note was found which stated as follows:

Dear Dave,

It's in the bag all weighed out. I hope you don't get mad. I'll tell you about everything when I get home.

Love you,

Tina

Approximately twenty to thirty minutes after the law enforcement agents entered the second floor apartment, appellant Herman arrived, carrying groceries.

After being apprised of their constitutional rights by Trooper Kessler, both appellants signed waivers, and thereupon informed the officer they had been residing together in the apartment since approximately November of 1977. Appellant Herman, in her admission, stated:

I wrote the note that was found in the bedroom to Dave.

In his admission, appellant Moser stated, "I started dealing small amounts of marijuana a couple of weeks ago, I sold nickels and dimes."[3] The police officer testified to these admissions.

The aforementioned items found on the bedroom table were secured, labeled, and placed in evidence bags at the scene of the arrest, and then taken to the State Police Laboratory in Harrisburg for analysis. At trial, James Miller, a chemist for the State Police Crime Lab testified that the seized evidence was tested and found to be marijuana, marijuana leaf fragments and marijuana seeds. The cumulative weight of the marijuana was 398.8 grams. There are approximately 454 grams to a pound.

The Commonwealth offered into evidence two "Certifications of Non-Licensure" under the seal and signature of the

---

**3.** Trooper Kessler testified the phrase "nickles and dimes" was terminology used by sellers and purchasers to identify various amounts of marijuana. A "dime" sold for $10.00 and contained 8 to 10 grams of marijuana; a "nickel" contained 3 to 5 grams and sold for $5.00.

Commissioner of Professional and Occupational Affairs. The certificates reflected that neither appellant Moser nor appellant Herman was licensed to order, prescribe or possess drugs. Appellants chose not to testify on their own behalf.

■ Appellants' first contention is that the Commonwealth failed to establish a proper chain of custody regarding the marijuana. We have found this contention to be without merit. From the testimony offered by the two State troopers, in conjunction with that offered by the police chemist, it is evident that the marijuana seized at appellants' residence was the same controlled substance examined by the chemist and subsequently submitted to the trial court as evidence.

> There is no requirement that the Commonwealth establish the sanctity of its exhibits beyond all moral certainty. It is sufficient that the evidence, direct and circumstantial, establish a reasonable inference that the identity and condition of the exhibits remained unimpaired until they were surrendered to the court.

*Commonwealth v. Miller*, 234 Pa.Super. 146, 155; 339 A.2d 573, 578 (1975).

Appellants, however, maintain that it was incumbent upon the Commonwealth to have produced as a witness, John Snyder, at custodian of the crime lab, in order to properly establish a chain of custody. The minor role played by the custodian in "logging" the evidence is not of sufficient magnitude to require his testimony. The chemist's testimony regarding the lab procedure was more than adequate in establishing the requisite chain of custody.

In *Commonwealth v. Rick*, 244 Pa.Super. 33, 366 A.2d 302 (1976), this Court was faced with the same question concerning whether or not a chain of custody was properly established. In the context of challenging his conviction for driving an automobile while under the influence of alcohol, appellant Rick contended that the trial court erred by admitting evidence of the alcohol content in a blood sample taken from him after his accident. A physician testified at trial that he personally extracted the blood from the defendant at

the hospital, labeled it accordingly, and handed it to an unknown technician who placed it in the lab toxicology refrigerator. Since "it is well established that the Commonwealth need not produce every individual who came into contact with an item of evidence," *id.*, 244 Pa.Super. at 38, 366 A.2d at 304, this Court there held that the Commonwealth's failure to produce the lab technician as a witness was insufficient grounds for reversal. *See also Commonwealth v. Procter*, 253 Pa.Super. 369, 385 A.2d 383 (1978); *Commonwealth v. Jenkins*, 231 Pa.Super. 266, 332 A.2d 490 (1974). *Accord U.S. v. De Larosa*, 450 F.2d 1057 (3d. Cir. 1971) *cert. denied sub nom. Baskin v. U.S.*, 405 U.S. 927, 92 S.Ct. 978, 30 L.Ed.2d 800 (1972).

In the case at bar, the testimony offered at trial by the Commonwealth regarding the procedure followed in securing, labeling, transferring, and examining the seized marijuana reflects a practice which insured the integrity and sanctity of the evidence. To expect the Commonwealth to produce every possible individual who may have had fleeting contact with the evidence would cause unnecessary logistical problems concerning chain of custody. We, therefore, find appellants' contention in this regard to be totally without merit.

■ Secondly, appellants contend that the chemist failed to testify at trial that the marijuana analyzed was the type prohibited by law. Appellants' counsel, in his brief, states: "There are also species of marijuana known as Cannabis indicia and Cannabis americana, and possession, use or sale of these types of marijuana is not specifically prohibited by law." This distinction postulated by counsel has no support in statute or case law.

■ Marijuana is a Schedule I drug under Section 4 of the Controlled Substance, Drug, Device and Cosmetic Act. 35 P.S. § 780–104(1)(iv). It is defined to consist of "all forms, species and/or varieties of the genus Cannabis sativa L." 35 P.S. 780–102(b). The term marijuana is of Mexican origin referring to the flowering tops and dried leaves of the hemp plant. *Leary v. U.S.*, 395 U.S. 6, 89 S.Ct. 1532, 23

L.Ed.2d 57 (1969). However, because of the difference in soil content and climate, the plant develops different physical characteristics in various parts of the world. Thus, Cannabis indicia is the name given to Cannabis sativa L. grown in India, see 28 C.J.S. *Drugs and Narcotics* § 3 (Supp. 1974), whereas Cannabis americana is the name given to marijuana which is yielded by the Cannabis sativa L. plant cultivated in this country, *State v. Navaro,* 83 Utah 6, 26 P.2d 955 (1957). From the statutory definition of marijuana quoted above,[4] it is apparent that the legislature intended to embrace all species of the genus Cannabis sativa L. as forms of marijuana prohibited by the Act. *See U.S. v. Honneus,* 508 F.2d 566 (1st Cir. 1974); *U.S. v. Moore,* 446 F.2d 448 (3d Cir. 1971) *cert. denied* 406 U.S. 909, 92 S.Ct. 1617, 31 L.Ed.2d 820 (1972). We, therefore, hold that the chemist's failure to identify the species of the analyzed marijuana is of no consequence.

■ The third contention raised by appellants involves the introduction of documents which indicated that neither appellant was licensed by this Commonwealth to lawfully possess marijuana. The documents at issue are "Certifications of Non-Licensure" issued by the Commissioner of the Professional and Occupational Affairs.[5] The documents were duly signed and imprinted with the Seal of the Commonwealth.

Appellant's entire statement of the question and argument on this third issue consisted of the following three sentences:

3. The statement of non-licensure of the Appellants should not have been admitted into evidence.

The Commonwealth introduced into evidence statements which indicated that Appellants were not on the list of persons permitted to have possession of marijuana.

---

4. 35 P.S. § 780–102(b).

5. The Professional and Occupational Affairs Bureau consists of 22 administrative boards (e. g. State Board of Pharmacy, State Board of Medical Education and Licensure, etc.) which are empowered under the licensure laws of this Commonwealth to process applications and authorize licenses.

The list was not all inclusive, as there were many other agencies that could have licensed persons, who were not included in the lists submitted to the Court by the Commonwealth.

These documents of non-licensure, however, were properly admitted by the trial court pursuant to Sections 6103 and 6104 of the Judicial Code, 42 Pa.C.S. §§ 6103, 6104 (Supp. 1980). In effect, these certificates prove that none of the listed agencies have in their records a license issued to David Alan Moser or Tina Sue Herman for the lawful possession of marijuana. Moreover, despite appellants' bald assertion that the certificates did not list *all* of the agencies empowered to license the possession of marijuana,[6] the trial court's opinion states that the appellants "were not licensed before any of the Boards of the Bureau whose licensees have statutory authority to order, prescribe or possess drugs." In fact, in the charge to the jury the trial court stated that there was no evidence of lawful possession in this case, but that the Commonwealth was the party who had the burden to prove that appellants were not licensed or registered to possess marijuana.[7] In this context, the jury went on to find that all elements of the crime, as charged by the trial judge, were proven beyond a reasonable doubt.

■ Although appellants' contention, when narrowly read, concerns itself only with the admissibility of the certificates

---

**6.** The agencies listed were the State Board of Medical Education and Licensure, the State Board of Osteopathic Examiners, the State Board of Nurse Examiners, the State Board of Pharmacy, the State Board of Podiatry Examiners, the State Board of Veterinary Medical Examiners, the State Dental Council and Examining Board, and the State Board of Optometrical Examiners. This list included all of those agencies under the purview of the Commissioner of Professional and Occupational Affairs which would conceivably issue licenses for the possession of controlled substances. Excluded from the list were those agencies under the Commissioner which obviously do not concern themselves with controlled substances, e. g. the State Real Estate Commission and the State Board of Auctioneer Examiners.

**7.** The court charged the jury as such because the trial below occurred during the time from between *Sojourner I* and *Sojourner II*. However, this is no longer the law after *Sojourner II*. *See* the discussion of these cases, *infra*.

of non-licensure, we perceive the real crux of their argument as challenging the sufficiency of the evidence needed to support a finding of non-licensure beyond a reasonable doubt.[8] However, in order to properly address this argument, we must note that the trial in this case took place on September 19th and 20th of 1978 which was during a period of time that reflects a change in the relevant case law. Prior Pennsylvania case law held that the Commonwealth need not prove the accused's non-licensure as an essential element of its case for possession of drugs with intent to deliver under the Controlled Substance, Drug, Device and Cosmetic Act. Rather, this burden of proof was placed upon the accused. *Commonwealth v. Stawinsky*, 234 Pa.Super. 308, 339 A.2d 91 (1975). *See also U.S. ex rel. Kirchner v. Johnstone*, 454 F.Supp. 14 (E.D. Pa. 1978); *Commonwealth v. Webb*, 254 Pa.Super. 429, 386 A.2d 25 (1978) (opinion in support of affirmance) (decision split on unrelated issue). On July 12, 1978, however, this court decided *Sojourner I* which overruled *Stawinsky* and its progeny and held that "the Commonwealth had the burden of proving that appellant was not licensed to possess a controlled substance." *Commonwealth v. Sojourner*, 268 Pa.Super. 472, 479, 408 A.2d 1100, 1104 (1978) (*Sojourner I*). But the efficacy of *Sojourner I* was short-lived because we granted a rehearing in the case and subsequently issued an opinion on June 22, 1979 which modified the rationale of our previous holding. *Commonwealth v. Sojourner*, 268 Pa.Super. 488, 408 A.2d 1108 (1979) (*Sojourner II*). Although we maintained our position that non-licensure is an element of the Commonwealth's case which must be proven beyond a reasonable doubt, we modified *Sojourner I* by holding that this burden of persuasion arises only after the accused first comes forward with some credible evidence of authorization. *Id. See also Commonwealth v. Campbell*, 280 Pa.Super. 200, 421 A.2d 681 (1980). Nevertheless, because of the accuseds' failure to put forth any evidence of authorization, the change in law

---

8. Although this concededly may stretch the fabric of appellants' contention, we note that the sufficiency claim was preserved by appellants' post-verdict motions and we will, therefore, address it.

from *Stawinsky* to *Sojourner II* has no practical effect upon the instant case: the failure of appellants Herman and Moser to come forward with some evidence of authorization to meet their burden of production obviated the necessity for the Commonwealth to establish non-licensure beyond a reasonable doubt in satisfaction of its burden of persuasion. *See Sojourner II,* 268 Pa.Super. at 497–501, 408 A.2d at 1113–1115. In fact, appellant's contention herein is a perfect illustration of the problems we foresaw in *Sojourner II* concerning the unreasonableness of requiring the Commonwealth to disprove each and every conceivable way in which the appellants could have been authorized to possess marijuana. This is precisely the gist of appellants' contention and it is part of the basis of our holding in *Sojourner II* :

> We are inclined to agree with the Commonwealth that the CSDDCA would be virtually unenforceable if the Commonwealth were obliged to disprove, in every case, every potential type of authorization to possess controlled substances which the CSDDCA recognizes. With respect to "practitioners"[12] alone, the Commonwealth would be required to offer proof of non-authorization from as many as eleven different licensing boards of agencies. If drug manufacturers,[13] salesmen, carriers, and others who possess controlled substances in the regular course of business,[14] as well as persons holding valid prescriptions[15] were included among persons authorized to possess, manufacture, or deliver controlled substances, enforcement of the CSDDCA would become virtually impossible.[16] On the other hand, requiring the defendant to offer some credible evidence of the particular kind of authorization upon which he is relying for his defense renders the Commonwealth's task immeasurably easier, and the purposes of the CSDDCA are not forfeited.

[12] 35 P.S. § 780–102(b) (1977).

[13] 35 P.S. § 780–106(a) (1977).

[14] 35 P.S. § 780–106(a)(1) & (g)(1)–(2) (1977).

[15] 35 P.S. § 780–106(g)(3) (1977).

[16] If residents of other states who are entitled to possess controlled substances while in Pennsylvania were added to this list, the principal prohibitions of the CSDDCA would certainly be illusory.

230

*Id.,* 268 Pa.Super. at 497–498, 408 A.2d at 1113.

Thus, having decided that the Commonwealth's burden of persuasion with respect to non-licensure remained untriggered in the present case, the question of whether or not the certificates of non-licensure were sufficient evidence to prove this element beyond a reasonable doubt has become moot.

■ Regarding appellants' final contention, we note that before the Commonwealth may introduce a defendant's confession, it must first establish by independent evidence that a crime has in fact transpired. *Commonwealth v. Moyer,* 277 Pa. 172, 419 A.2d 717 (1980); *Commonwealth v. Cockfield,* 465 Pa. 415, 350 A.2d 833 (1976); *Commonwealth v. May,* 451 Pa. 31, 301 A.2d 368 (1973); *Commonwealth v. Leamer,* 449 Pa. 76, 295 A.2d 272 (1972); *Commonwealth v. Palmer,* 448 Pa. 282, 292 A.2d 921 (1972). Appellants maintain that the Commonwealth failed in its endeavor to establish the corpus delicti for the crime of possession of drugs with intent to deliver, and that, therefore, the testimony offered by Trooper Kessler, regarding the admissions, should not have been introduced. We find appellants' argument unsupportable in light of the record.

The rule that a confession or admission of an accused cannot be admitted into evidence unless and until the corpus delicti of that crime has first been established by independent evidence is fundamental to our criminal judicial process. "The grounds on which the doctrine rests is the hasty and unguarded character which is often attached to confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed." *Commonwealth v. Turza,* 340 Pa. 128, 133, 16 A.2d 401, 404 (1940). *See Commonwealth v. Leamer,* 449 Pa. 76, 295 A.2d 272 (1972); *Commonwealth v. Palmer,* 448 Pa. 282, 292 A.2d 921 (1972); *Commonwealth v. Burns,* 409 Pa. 619, 187 A.2d 552 (1963).

■ In establishing a criminal case, it is incumbent upon the Commonwealth to show: "(1) that a loss has occurred;

(2) that the loss occurred through a criminal agency, and (3) that the accused was, in fact, the perpetrator of the deed." *Commonwealth v. May*, 451 Pa. 31, 301 A.2d 368 (1973); *Commonwealth v. Burns, supra.* The corpus delicti of a crime consists of the first two factors or elements. *Commonwealth v. May, supra; Commonwealth v. Rhoads*, 225 Pa.Super. 208, 310 A.2d 406 (1973). These two elements are, therefore, the ones to be proven prior to and independent of the appellants' confessions. However, these elements need not be proven directly; it is sufficient that the evidence offered to establish a corpus delicti is circumstantial. *Commonwealth v. Leslie*, 424 Pa. 331, 227 A.2d 900 (1967).

In reviewing the evidence submitted by the Commonwealth prior to the introduction of testimony pertaining to the admissions, it is apparent that the corpus delicti was established. Specifically considering possession of drugs with intent to deliver, the corpus delicti consists of proof that the defendant indeed possessed a controlled substance and that said possession was with the intent to deliver or transfer to another party. The items, tested and found to be marijuana, the plastic bags and ties, the scale, and the note from "Tina" to "Dave" [9] were of sufficient degree and nature to warrant an inference of joint conscious dominion of the marijuana with an intent to possess, control and deliver.

We, therefore, hold that the evidence did establish possession of drugs with intent to deliver and that it was, therefore, permissible for the jury to consider testimony pertaining to the admissions or confessions of both appellants.

The judgment of sentence is affirmed.

9. It is certainly reasonable to infer that the note introduced in evidence, and used to establish the corpus delicti, was written by the appellant Tina Sue Herman for appellant David Alan Moser.