**Commonwealth v. Castillo**

C.P. of Lehigh County, no. 62/2010.

*Steven Luksa,* for Commonwealth.
*Karen Schular*, for defendant.

BANACH, *J.*, November 1, 2010—On February 17, 2010, the above-captioned defendant was arraigned on one count of criminal homicide[1], one count of robbery[2], one count of theft by unlawful taking[3], and one count of receiving stolen property[4]. Timely omnibus pretrial motions were filed on March 19, 2010, including a motion to suppress results of search warrant issued November 19, 2009, motion to suppress search warrant issued November 20, 2009, motion to suppress court orders pursuant to 18 Pa.Con.Stat.Ann. §5721.1 (b)(2) and (6), motion to dismiss robbery charge, motion to suppress defendant's statements, and motion to bar Commonwealth from seeking death penalty. A pretrial motion hearing was held before this court on July 20, 2010. At the conclusion of the hearing, the court took the omnibus pretrial motions under advisement.

On September 9, 2010, the defendant submitted a brief in support of omnibus pretrial motions, specifically addressing the motions to suppress the search warrants issued November 19, 2009 for the defendant's person, the motion to suppress the court orders authorizing the defendant's electronic records, and the motion to suppress the search warrant issued for the defendant's arrest, a cellular telephone and cellular telephone accessories. On September 23, 2010, the commonwealth submitted its response to the defendant's pretrial motions.

Upon consideration of the defendant's omnibus pretrial

1. 18 Pa.Con.Stat.Ann. §2501
2, 18 Pa.Con.Stat.Ann. §3701 (A)(1)
3. 18 Pa.Con.Stat.Ann. §3921
4. 18 Pa.Con.Stat.Ann. §3925

motion, the briefs submitted by the defendant and the commonwealth, relevant case law and the applicable statutes, the defendant's omnibus pretrial motion is denied.

## SUMMARY OF THE FACTS

On November 17, 2009, members of the Allentown Police Department were summoned to 516 North Park Street in the City of Allentown, Lehigh County, Pennsylvania. Upon their arrival, police observed an unresponsive male lying on the ground in the vestibule area of the home, approximately ten feet from the front door. Police observed a bleeding head laceration. The victim was identified as Mr. Delfino Sanchez-Villaneueva.

In addition to Mr. Sanchez's body, Detective Pedro Cruz of the Allentown Police Department, who responded to the scene, observed what appeared to be blood stain that had been attempted to be cleaned on the wall where Mr. Sanchez was laying. Further, police officers found part of a brick and a blood-soaked white, black and gold Pittsburgh Steelers sweatshirt/sweater in the trash container in the kitchen area of the residence. These items were secured and taken into evidence.

An autopsy was performed by Dr. Sara Funke. The cause of death was blunt force head trauma and the manner of death was ruled a homicide.

Through investigation, police determined that Mr. Sanchez and the owner of the residence, Mr. Francisco Garcia, were the only individuals living at the residence.

However, the defendant formerly resided at the home and had recently moved out. Additional police investigation established that Mr. Sanchez had withdrawn money from his bank account hours before his death (approximately $4, 400) and wired a portion of the money (approximately $1,000) to the Dominican Republic at Mundo Satellite, Inc., located at 607 North 7th Street, Allentown, Lehigh County, Pennsylvania. Approximately one hour following the victim's transaction at Mundo Satellite, the defendant wired money (approximately $1,000) to the Dominican Republic, also from Mundo Satellite.

Although no video surveillance from November 17, 2009 was obtained, police were able to obtain video from Mundo Satellite that reflected the defendant's prior transactions. Two weeks before the victim's death, video captured the defendant making a transaction wearing a white Pittsburgh Steelers shirt similar to the blood-covered shirt recovered from the murder scene.

Police also obtained surveillance video from locations in the general vicinity of 516 North Park Street on the day of the murder. Both the victim and defendant were identifiable as being in the same general area at roughly the same time.

On November 19, 2009, Detective Cruz applied for a search warrant for the body of the defendant, seeking items including the defendant's blood, fingerprints and buccal swabs. On the same date, court orders were issued, authorizing electronic records pertaining to two cellular telephone numbers used by the defendant.

On November 20, 2009, the defendant was taken into custody for the purposes of executing the search warrant for his body. At that time, the defendant was given Miranda warnings, signed a waiver of his rights and was interviewed in Spanish by Detective Cruz, in the presence of Detective Glenn Granitz, Jr.[5] During the interview, the defendant told Detective Cruz that he was present at the victim's residence on November 17, 2009 and that while there, he and the victim argued over money the victim owed to the defendant. The defendant related that a struggle eventually ensued in the kitchen area, resulting in the defendant going to the basement, retrieving a brick and striking the defendant in the back of the head multiple times. The defendant removed a large amount of money from the victim's pocket, attempted to clean up the blood, and discarded his Pittsburgh Steelers shirt in the kitchen garbage can.

## DISCUSSION AND CONCLUSIONS OF LAW

The defendant's omnibus pretrial motion contains a motion to suppress results of search warrant issued November 19, 2009, a motion to suppress search warrant issued November 20, 2009, a motion to suppress court orders (for the electronic records) pursuant to 18 Pa.Con. Stat.Ann. §5721.1 (b)(2) and (6), a motion to dismiss robbery charge, a motion to suppress defendant's statements, and a motion to bar commonwealth from seeking death penalty.

---

5. Detective Cruz testified that he and the defendant were speaking Spanish to each other during the interview. Detective Cruz would explain the exchange, in English, to Detective Granitz.

*Motion to Suppress the November 19, 2009 and November 20, 2009 Search Warrants*

First, the defendant argues that the search warrant issued on November 19, 2009 for the body of the defendant ought to be suppressed because probable cause was not shown within the four corners of the affidavit. Specifically, the warrant in question listed "items to be seized" as "buccal swabs, fingernail scraping, blood, fingerprints, clothing, body inspection for cuts and bruises, photograph of [defendant] and house keys." OPTM Ex. C-14. Second, the defendant argues that the four corners of the affidavit attached to the November 20, 2009 search warrant does not contain specific information connecting the defendant to the victim's death. The defendant argues that based on the facts put forth in the affidavits attached to each warrant, no probable cause was substantiated and the warrants were improperly granted.

Article 1, Section 8, of the Pennsylvania Constitution provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

The Fourth Amendment of the United States Constitution states:

The right of people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 8, was drafted to protect persons from unreasonable searches and seizures conducted pursuant to general warrants. See *Commonwealth v. Edmunds*, 526 Pa. 374, 393, 586 A.2d 887, 896-97 (Pa. 1991). See also *Commonwealth v. Grossman*, 521 Pa. 290, 555 A.2d 896 (Pa. 1989). "The linch-pin [sic] that has been developed to determine whether it is appropriate to issue a search warrant is the test of probable cause." *Edmunds* at 899 (quoting *Commonwealth v. Miller*, 518 A.2d 1187, 1191 (Pa. 1986)). "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." *Commonwealth v. Jones*, 605 Pa. 188, 199, 988 A.2d 649, 655 (Pa. 2010) (citing *Commonwealth v. Thomas*, 448 Pa. 42, 52, 292 A.2d 352, 357 (Pa. 1972)).

Probable cause is determined based on the totality of the circumstances and such "determinations must be based on common sense non-technical analysis." See *Commonwealth v. Gray*, 509 Pa. 476, 484, 503 A.2d 921, 925 (Pa. 1985). "The determination of probable cause must be based on facts described within the four corners of the supporting affidavit." *Commonwealth v. Way*, 492 A.2d

1151, 1154 (Pa. Super. 1985). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 484, 503 A.2d at 925. (citing *Jones v. United States*, 362 U.S. 257, 271, (1960)).

The defendant argues that the affidavit attached to the November 19, 2009 search warrant application contained insufficient probable cause for the magistrate to authorize the search warrant of the defendant. Specifically, the defendant argues that "[n]othing was stated [in the affidavit]...that DNA, hair or blood was sent to the laboratory for testing and/or any link indicating that there was evidence to be compared to the defendant." Def. Br. OPTM, 6. Further, he argues that the only facts linking the defendant to the homicide were that he a) wore a Steelers shirt two weeks prior the homicide and b) that he sent money to the Dominican Republic, which he had done previously. *Id.* at 6-7. The commonwealth highlights the probable cause affidavit by its reference to the fact that the warrant was issued within two days of the homicide, the police determination that there was a struggle within the residence (i.e. blood smears on the walls, injuries determined to be indicative of a struggle), there was no observable indicia of a forced entrance into the victim's residence, the defendant was a prior roommate of the victim, that the victim had withdrawn a large sum of

money from his bank account and had wired money to the Dominican Republic the morning of his demise, and that the defendant wired money from the same location (Mundo Satellite, Inc.) to the Dominican Republic within an hour of the victim's death. Further, police had viewed surveillance video taken from Mundo Satellite eleven days prior to the murder, depicting the defendant wearing a Pittsburgh Steelers sweatshirt similar in style to the bloody one recovered at the murder scene.

We believe that the magistrate had sufficient probable cause to issue the warrant in this case, based on the information provided within the four corners of the affidavit attached to the search warrant application. The magistrate was presented with evidence that a struggle between the victim and his assailant took place in the victim's residence, absent indicia of forced entry. A subsequent autopsy noted the wounds on the victim's body, including bruising on the victim's neck and back and lacerations to the victim's neck consistent with having been made by fingernails during a struggle.[6] The police learned that the defendant was the victim's former roommate. The police also noted evidence of blood smears on the walls, blood in the kitchen sink drain, and in the basin of a water cooler in the kitchen. The bloodied Pittsburgh Steelers sweatshirt found in the victim's residence was also consistent with the surveillance footage depicting the defendant wearing a

6. See *Commonwealth v. Madison*, 462 A.2d 228 (Pa. 1983) (suggesting that DNA collection via a warrant could provide evidence of a struggle) and *Commonwealth, v. Robson*, 337 A.2d 573 (Pa. 1975) (suggesting that the collection of a sample of the defendant's pubic hair based upon probable cause of sexual activity based on the nudity of the decedent and condition of the bed in the home was proper).

similar item during prior transactions at Mundo Satellite. Viewing the facts presented in the warrant, a magistrate employing a "practical" and "common sense" approach to the evidence could reasonably conclude that there is a fair probability that contraband or evidence of a crime will be found in a particular place (i.e. the defendant's person).

The defendant argues that there was insufficient probable cause within the four corners of the affidavit to issue the November 20, 2009 search warrant, which authorized the seizure of the defendant, his T-Mobile cellular telephone and accessories, all located at 711 North 8th Street, Allentown, Lehigh County, Pennsylvania. Specifically, the defendant contends that the affidavit "does not specify, in any way, how the defendant was connected to the crime of the victim's homicide." Def. Br. OPTM, 9.

After review of the affidavit of probable cause (Attachment A) for the November 20, 2009 warrant, the court disagrees with the defendant, finding sufficient probable cause within the four corners of the document. Magistrate David Leh was presented with information that the victim's was found deceased at 516 N. Park Street, Allentown, Pennsylvania with a deep laceration to his head. A subsequent autopsy concluded that the victim's homicide was a result of blunt force trauma to the head and that there were wounds on the victim consistent with a struggle. The affidavit also referred to the November 19, 2009 sealed search warrant for buccal swabs, fingernail scrapings, and a search of the body of the defendant and the court orders authorizing the monitoring of the defendant's cellular

telephone's location. Also, the result of the monitoring concluded that the defendant's cellular telephone was consistently located in the immediate vicinity of 711 N. 8th Street, Allentown. Further information included the fact that the defendant's girlfriend, Elvira Betances-Lora, was believed to live in the area of North 8th Street, in the vicinity of Washington and Tilghman Streets and she listed the defendant as being present at 711 N. 8th Street as recently as September 2009, according to a police report. Investigation confirmed that the defendant was still in possession of the cellular telephone as of 10 p.m. on November 19, 2009.

Again, viewing the information available within the four corners of the affidavit would allow the magistrate to make a "common sense" and "practical" determination that execution of the November 20, 2009 warrant would result in a fair probability that contraband or evidence of a crime will be found in a particular place (i.e. the 711 North 8th Street). Therefore, the court declines to suppress the results of the November 20, 2009 search warrant.

*Motion to Suppress the November 19, 2009 Court Orders regarding Electronic Records*

On November 19, 2009, Allentown Police Detective Glenn Granitz, Jr. applied for two court orders regarding the defendant's cellular telephone numbers, 484-951-1144 and 484-619-7813, pursuant to 18 Pa.Cons.Stat. §5743 and in accordance with 18 U.S.C. § 2703(d) (2009). On the same date, each court order was signed by the Honorable William H. Platt. Both court orders permitted the commonwealth to obtain detailed cellular records,

including text messages sent and received, subscriber information and the capability to employ "pinging and cell site tower triangulation to locate the 'real time' of the cellular phone(s) location(s)."

Pursuant to §5743 (d), a court order for such information shall "be issued only if the investigative or law enforcement officer shows that there are specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." Therefore, the court must determine whether the affidavits attached to the court orders presented to Judge Platt exhibited a reasonable belief that the information would be relevant and material to the investigation concerning Mr. Sanchez.[7]

In the case at bar, each court order provided that on November 17, 2009, Mr. Sanchez was found deceased in his home without signs of forced entry and that he had recently received a retirement fund payout in excess of $4,000. According to the victim's daughter, Mr. Sanchez was going to withdraw money on the morning of November 17, 2009 to make payments on debts. Via video surveillance, detectives were able to confirm that Mr. Sanchez went to Mundo Satellite at approximately 9:20 am to send approximately $700.00 to family members

---

7. The court agrees with the Commonwealth that the defendant's reliance on *Commonwealth v. Riffert*, 549 A.2d 566 (Pa.Super. 1988) and *Commonwealth v. Doty*, 498 A.2d 870 (Pa.Super. 1985) for the notion that the Commonwealth must demonstrate probable cause to obtain court orders pursuant to §5743 is in error. These cases dealt with police application for a contemporaneous listening of a live conversation, distinguishable from the instant case.

abroad. Police were able to determine that the victim left Mundo Satellite and appeared to walk towards his home. At approximately 10:21 am, the defendant arrived at Mundo Satellite in possession of $1,000.00. At Mundo Satellite, the defendant provided his telephone number as 484-951-1144 during several transactions previously made at Mundo Satellite. Additional information was provided that the defendant had also made telephone calls from cellular telephone number 484-619-7813.

This information included in the affidavit attached to the court orders, provided "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." Therefore, the issuing of these court orders was valid and the information and evidence obtained from them is not suppressed.

*Motion to Dismiss: Robbery*

The defendant argues that the commonwealth did not present a prima facie case for the offense of robbery at the time of the preliminary hearing and that it also failed to establish the corpus delecti for the offense of robbery. After review of the facts of the instant case and relevant case law, the defendant's motion to dismiss is denied.

"In Pennsylvania, a person accused of a crime, with certain exceptions...has a right to a preliminary hearing." Commonwealth exrel. *Buchanan v. Verbonitz*, 525 Pa. 413, 416, 581 A.2d 172, 173 (Pa. 1990). "The

principal reason for a preliminary hearing is 'to protect an individual's right against unlawful arrest and detention." *Id.*, citing *Com. ex rel. Maisenhelder v. Rundle*, 414 Pa. 11, 198 A.2d 565 (Pa. 1964). The Commonwealth bears the burden at a preliminary hearing of establishing at least a prima facie case that a crime has been committed and that the accused is probably the one who committed it. See *Commonwealth v. Prado*, 481 Pa. 485, 393 A.2d 8 (Pa. 1978); *Commonwealth v. Mullen*, 460 Pa. 336, 333 A.2d 755 (Pa. 1975). To sustain that burden, it is well settled that the Commonwealth must produce evidence, such as to present "'sufficient probable cause to believe that the person charged has committed the offense stated;' in other words, it should make out a prima facie case of guilt. It should be such that if presented at the trial in court, and accepted as true, the judge would be warranted in allowing the case to go to the jury." *Commonwealth ex rel. Scolio v. Hess*, 27 A.2d 705, 707 (Pa. Super. 1942) (citation ommited). Such evidence will be read in the light most favorable to the Commonwealth. See *Commonwealth v. Keller*, 823 A.2d 1004, 1010 (Pa. Super. 2003).

The prima facie standard requires that the commonwealth's evidence must establish that the crime has been committed. *Commonwealth v. Devlin*, 440 A.2d 562 (Pa. Super. 1982); *Commonwealth v. Beatty*, 421 A.2d 1159 (Pa. Super. 1980). To satisfy this requirement, the evidence must show the existence of each of the material elements of the charge. See *Hess* at 707. While the weight and credibility of the evidence are not factors at this stage, and the commonwealth need only demonstrate sufficient

probable cause to believe the person charged has committed the offense, the absence of evidence as to the existence of a material element is fatal. See *Commonwealth v. Wojdak, 502 Pa. 359, 369-70, 466 A.2d 991, 997 (Pa. 1983)*. Thus where the commonwealth's case relies solely upon a *tenuous inference* to establish a material element of the charge, it has failed to meet its burden of showing that the crime charged was committed. *Id.* (emphasis in the original). However, "[i]nferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect." *Commonwealth v. Owen,* 580 A.2d 412, 414 (Pa. Super. 1990).

While the commonwealth's prima facie burden may be established with wholly circumstantial evidence, "before the Commonwealth may introduce a defendant's confession, it must first establish by independent evidence that a crime has in fact transpired." *Commonwealth v. Herman,* 431 A2d 1016, 1022 (Pa. Super. 1991); see also *Commonwealth v. Stasiak,* 451 A.2d 520, 523 (Pa. Super. 1982). Such a rule "is fundamental to our criminal judicial process. 'The grounds on which the doctrine rests is the hasty and unguarded character which is often attached to confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed.'" *Herman* at 1022 (citing *Commonwealth v. Turza,* 340 Pa. 128, 134, 16 A.2d 401, 404 (Pa. 1940)). "In establishing a criminal case, it is incumbent upon the Commonwealth to show: '(1) that a loss has occurred; (2) that the loss occurred through a criminal agency, and (3) that the accused was, in fact, the perpetrator of the

deed.'" *Id.* (internal citations omitted). "The corpus delicti of a crime consists of the first two factors or elements." *Id.* (internal citations omitted). "These two elements are, therefore, the ones to be proven prior to and independent of the [defendant's] confession. However, these elements need not be proven directly; it is sufficient that the evidence offered to establish a corpus delicti is circumstantial." *Id.* (citing *Commonwealth v. Leslie*, 424 Pa. 331, 227 A.2d 900 (Pa. 1967). "The Commonwealth need not prove the existence of a crime beyond a reasonable doubt as an element in establishing the corpus delicti of a crime, but the evidence must be more consistent with a crime than with accident." *Commonwealth v. Dupre*, 866 A.2d 1089 (Pa. Super. 2005)(citing *Commonwealth v. McMullen*, 745 A.2d 683 (Pa. Super. 2000)).

One exception to the corpus delecti rule is what is commonly referred to as the closely related crimes exception, which states:

where a defendant's confession relates to two separate crimes with which he is charged, and where independent evidence establishes the corpus delicti of only one of those crimes, the confession may be admissible as evidence of the commission of the other crime. *Commonwealth v. Fears*, 836 A.2d 52 (Pa. 2003).

"This exception applies only where the relationship between the crimes is sufficiently close so as to ensure that the purpose underlying the corpus delicti rule, i.e., to prevent conviction where no crime has occurred, is not violated." *Dupre* at 1099. In *Commonwealth v. Bardo,*

*575 Pa. 140,* 709 A.2d 871(Pa. 1998), the defendant gave a statement to police confessing to killing and sexually assaulting a three-year-old victim. The trial court allowed the statement to be admitted regarding both crimes although the commonwealth introduced no evidence of sexual assault prior to introducing the confession. The court deemed the crimes sufficiently close and allowed the admission of the confession.

The defendant is charged with robbery, pursuant to 18 Pa.Con.Stat.Ann. §3701(A)(1)(i), which provides:

(1) A person is guilty of robbery if, in the course of committing a theft, he:

(i) inflicts serious bodily injury upon another

In the instant case, when reviewing the evidence presented at the preliminary hearing, absent the defendant's statement, it is apparent that the commonwealth has presented a prima facie showing regarding the charge of homicide. At the preliminary hearing, Detective Cruz testified that it became apparent at the crime scene that a struggle had taken place involving the deceased victim, who was lying in the vestibule area with head laceration. Detective Cruz observed that someone had attempted to clean blood from the wall in the immediate vicinity of where the victim was found and the victim's body was bruised. Further, a blood-soaked brick and blood-stained Pittsburgh Steelers sweatshirt were found in the trash container in the victim's kitchen. Dr. Funke opined that the manner of death was homicide.

Detective Granitz testified at the OPTM hearing that a withdrawal of $4,400 was made by the victim on the morning of his demise. Minutes later, the victim sent approximately $672.75 via a wire transfer at Mundo Satellite. On that same date, approximately one hour later, the defendant wired $1,035 at Mundo Satellite. Further investigation revealed that the defendant wore a Pittsburgh Steelers sweatshirt similar to the one recovered from the murder scene when he visited Mundo Satellite weeks prior to the alleged homicide.

The commonwealth has clearly established the corpus delecti[8] of the crime of homicide via testimony taken at the preliminary hearing and the OPTM. It is also clear that the charges of homicide and robbery in this instant are sufficiently close to allow the defendant's statement to police to be admitted. This statement, coupled with the testimony taken at both hearings, establishes a prima facie charge of robbery.

*Motion to Suppress Defendant's Statements*

The defendant argues that after he was taken into custody via the November 20, 2009 search warrant, he made various statements regarding the charged offenses but that this statement was not made knowingly, voluntarily, or intelligently.

At the Preliminary hearing and at the OPTM hearing, Detective Pedro Cruz testified that he interviewed the

---

8. The court would also find that the commonwealth has sustained its prima facie burden regarding the homicide charge but this aspect was not challenged by the defendant.

defendant, in the presence of Detective Glenn Granitz, Jr., on November 20, 2009. When the defendant was taken into custody, Detective Cruz, speaking in Spanish, identified himself to the defendant. The defendant told Detective Cruz that he knew what this was about, that he had made a mistake, and that he wanted to give his side of the story.

At police headquarters, Detective Cruz began to speak with the defendant in English until the defendant told the detective that his primary language was Spanish. Subsequently, Detective Cruz and the defendant spoke in Spanish. The defendant was taken to the detective bureau where he was given a drink. Detective Cruz spoke in a calm, friendly tone. The defendant too was calm and appeared eager to speak with police. The defendant was informed as to why he was being booked and interviewed and was told about the search warrant. The defendant replied that the victim was like a father to him and that the defendant cared deeply for him.

The defendant was given his *Miranda* warnings, signed a waiver of rights form, and agreed to have the interview audio taped. The defendant was told that because Detective Granitz did not speak Spanish, Detective Cruz would be translating the conversation for him. The defendant appeared to understand the detective's questions.

First, the defendant told the police that he arrived at the victim's home, went into the home via the kitchen entrance and saw the victim lying on the ground, bleeding and having trouble breathing. He stated that he then moved the victim by putting his hands on Mr. Sanchez'

neck, became panicked and left for New York. Later in the conversation, the defendant's story changed. He told the police that Mr. Sanchez owed him money so when he saw that Mr. Sanchez was bleeding, he took some money from him. Further along in the conversation, the defendant changed his story again. He told Detectives Cruz and Granitz that Mr. Sanchez owed him money and that he went to Mr. Sanchez's home to collect the money. The two began to argue when the victim became aggressive towards the defendant. The defendant went to the basement and retrieved a brick, hit the victim in the head multiple times and moved the victim to the living room area. The defendant then removed approximately $1,250.00 from the victim's body.

Detective Cruz recalled that the defendant was cooperative and answered the questions posed appropriately. At no point did the defendant ask to speak to a lawyer, or decline to speak to the police. He was given a break to use the restroom, and later gave consent to the officers to go back to his residence to retrieve certain items. At the conclusion of his oral interview, the defendant gave a written statement.

"A constitutional burden is upon the Commonwealth to show voluntariness of a confession by a preponderance of the credible evidence." *Commonwealth v. Moore*, 454 Pa. 337, 341, 311 A.2d 620, 622 (Pa. 1973). "While there is of course no single litmus-paper test for determining constitutionally impermissible interrogation,... the ultimate test for voluntariness is whether the confession is the product of an essentially free and

unconstrained choice by its maker." *Commonwealth v. Alston*, 456 Pa. 128, 133, 317 A.2d 241, 243 (Pa. 1974). "An evaluation seeking to determine whether a confession is involuntary because of psychological coercion must consider those elements impinging upon a defendant's will such as: the duration, and the methods of interrogation; the conditions of detention, the manifest attitude of the police toward the defendant, the defendant's physical and psychological state and all other conditions present which may serve to drain one's powers of resistance to suggestion and undermine his self-determination." *Id.* at 133-34, 317 A.2d at 244.

It is apparent from the testimony at the preliminary hearing and the OPTM hearing that the police interaction with the defendant was appropriate and the interrogation was constitutionally permissible. There was no suggestion that the police employed tactics to overcome the will of the defendant or to undermine his self-determination. Therefore, the court denies the defendant's motion to suppress his statement.

*Motion to Bar Commonwealth from Seeking Death Penalty*

The defendant alleges that the commonwealth filed its notice to pursue the death penalty based upon the allegation that the murder of Mr. Sanchez was perpetrated during the commission of a felony, namely robbery. He avers that because the commonwealth was unable to sustain a prima facie case of robbery, pursuing the death penalty would expose the defendant to excessive punishment. We disagree.

For the reasons stated in a previous section of this opinion, it is the belief of this court that the commonwealth has established a prima facie case of robbery and that the defendant's confession is admissible at trial. The confession itself is "sufficient evidence that the killing was perpetrated in the course of a felony." See *Bardo* at 875. Therefore, if a jury were to impose the death penalty after a finding of guilty on the charge of homicide and finding that the killing "occurred in the course of a felony" said imposition of the death penalty would be permissible. The commonwealth will be permitted to pursue the death penalty based upon the allegation that the murder was perpetrated during the commission of a felony.

## CONCLUSION

Based on the foregoing analysis, the briefs submitted by the defendant and the commonwealth, relevant statute and case law, the defendant's omnibus pretrial motion is denied.

## ORDER

And now, November 1, 2010, upon consideration of the defendant's omnibus pretrial motion, including a motion to suppress results of search warrant issued November 19, 2009, motion to suppress search warrant issued November 20, 2009, motion to suppress court orders pursuant to 18 Pa.Con.Stat.Ann. §5721.1 (b)(2) and (6), motion to dismiss robbery charge, motion to suppress defendant's statements, and motion to bar commonwealth from seeking death penalty, filed on March 19, 2010.

It appearing that the defendant has submitted a brief in support of his omnibus pretrial motion and the commonwealth has submitted a brief in response, and upon consideration of both briefs, relevant statutes and case law precedent;

It is ordered that the defendant's motion is hereby denied.